GEORGE FERA *vs.* ABBA C. CHILD.

Suffolk.    March 4. — 9, 1874.    WELLS & ENDICOTT, JJ., absent.

Where a lease of a part of a building provides that " all merchandise, furniture and property of any kind which may be on the premises during the continuance of this lease is to be at the sole risk and hazard of the lessee, and that if the whole or any part thereof shall be destroyed or damaged by fire, water or otherwise, or by the use or abuse of the Cochituate water, or by the leakage or bursting of water pipes, or in any other way or manner, no part of said loss or damage is to be charged to, or be borne by, the lessors, in any case whatever," the lessor is not liable for damage done to the lessee's goods by the bursting of a water pipe in a part of the building not let to him.

TORT to recover damages done to the goods and property of the plaintiff by the bursting of a water pipe. The case was heard

in the Superior Court, trial by jury being waived, by *Lord*, J., who after judgment for the plaintiff allowed a bill of exceptions in substance as follows :

" The defendant was the owner of a building in which the accident occurred. She leased the store on the first floor and the cellar of this building to George W. Vinton, by indenture dated April 9, 1866, for a term of ten years, and by indenture of the same date she leased all of said building over said store for a like term of years to William Cumston. The Vinton lease was assigned to the plaintiff in 1868, with the assent of the defendant, and the plaintiff has since occupied the leased premises thereunder. In 1869, an under-tenant of a part of the premises under the Cumston lease put in a water-closet in the entry on the second floor of the building, (being the first floor of the part under the Cumston lease,) and ran the supply pipe from this closet into the plaintiff's premises, and there entered it into a supply pipe running through the plaintiff's premises up through this entry to another water-closet in the entry in the third story of the building. It did not appear when or by whom this latter water-closet was put in. The only faucet to turn off the water from the supply pipe in question was in the plaintiff's cellar. The pipe leading from the cellar to the water-closet in the second story was not the same that supplied the premises occupied by the plaintiff. The water had been shut off in the cellar from the latter. The plaintiff testified that the pipe in the entry above was left all open. Between Saturday evening, November 30, 1872, and the following Monday morning, the supply pipe leading to this water-closet in the entry on the second floor, put in in 1869, as aforesaid, burst in the entry at or near the door leading into the closet and caused the damage complained of. The only evidence in regard to this pipe came from the plumber who put it in for the tenant as aforesaid, who testified that it was a good pipe of the size and thickness of those usually put in in Boston, and that it was boxed in. One of the plaintiff's witnesses testified that it was not boxed in, as the box had been opened for repairs. The bursting of this pipe was caused by freezing, and the only evidence in regard to this was that on said Saturday evening the thermometer stood nineteen degrees above zero ; Sunday, at noon, twenty-one degrees above, and that after that it was higher.

" There was no evidence that the defendant had any knowledge in regard to this water-closet and fixtures. Cumston underlet the premises under his lease to one Shaler, whose sub-tenant put in the water-closet in 1869 as aforesaid. In November, 1872, Cumston's estate assigned his lease to one Morse, and it was agreed for the purposes of the trial that it was to be treated as an assignment to the defendant. There was a conflict of testimony as to whether, after this assignment, the room on the second floor opening from the entry where this water-closet was and this pipe burst, had been given up to and accepted by the defendant before the accident.

" The court ruled that as the place where the pipe burst was not within the premises held by the plaintiff under the Vinton lease as aforesaid, the provisions in that lease that the property on the leased premises should be at the risk of the lessee, and that no part of the loss or damage to it from the causes stated should be a charge to the lessor as therein particularly set forth, did not apply to damage caused by such bursting ; that it was immaterial whether the room aforesaid was or was not surrendered, as where there were water-closets in the entries of a building let to different tenants, and in this case to tenants other than and not including the plaintiff, there was an implied agreement on the part of the owner of the building that such water-closets and fixtures should be suitable and proper and should be kept suitably and properly protected from the weather. The court found upon the evidence aforesaid that the supply pipe was either not a proper one or was not properly protected, (otherwise it would not have frozen up and burst,) and held in pursuance with the aforesaid rulings that the defendant as the owner of said building was liable for the damage occasioned by such bursting. The defendant excepted to the foregoing rulings."

The material provisions in the lease are stated in the opinion of the court.

*D. Thaxter*, for the defendant.

*S. J. Thomas*, for the plaintiff. The lessee had not only no control over the fixtures in other parts of the building, but no access to them and no right to meddle with them. It could not have been in contemplation by the parties that he should see to the repair of such other fixtures or to their proper management

It was agreed that the assignment by Cumston of his lease to Morse was an assignment to the defendant. The assignment was prior to the injury complained of. The judge has found, as facts, that the water-closet was not a part of the premises let to the tenants, or any of them, but remained in the control of the defendant, the owner ; and that the pipe burst, either from a defect in it or from want of proper protection. Whether the rooms leased to Cumston were occupied by the defendant or by a tenant of hers, was in dispute. The judge ruled this was immaterial, because, from the situation of the water-closet, separate from the rooms, and in that part of the building which she did not let, but over which she retained the control, it was her duty to see to it. Having found these facts, he ruled, as law, that the liability of the defendant followed, whether the bursting was in consequence of an original defect in the pipe, or from want of proper care of it. And this, it is submitted, was also right.

MORTON, J. This is an action to recover damages for an injury to the goods of the plaintiff in the store leased by him of the defendant, caused by the bursting of the water pipes in a part of the building not included in the lease. The plaintiff's lease contains the following provision : " And it is also hereby understood and expressly agreed by the parties to this indenture, that all merchandise, furniture and property of every kind, which may be on the premises during the continuance of this lease, is to be at the sole risk and hazard of the lessee, and that if the whole or any part thereof shall be destroyed or damaged by fire, water or otherwise, or by the use or abuse of the Cochituate water, or by the leakage or bursting of water pipes, or in any other way or manner, no part of said loss or damage is to be charged to, or be borne by, the lessors in any case whatever." The learned judge who presided at the trial ruled, that as the place where the pipe burst was not within the premises held by the plaintiff under his lease, the provision above quoted did not apply to damage caused by such bursting.

We are of opinion that this ruling was erroneous. The language of the provision is very broad, and by its natural import throws upon the lessee the risk of loss or damage to his property. in the store, caused by the leakage or bursting of water pipes in any part of the building.

The clause immediately following this provides that the lessee shall " keep whole and in good condition, all the window and other glass on the premises, and also the pipes, faucets and water fixtures ; " and a prior clause provides that the lessee shall " save the lessors and their representatives harmless from all loss or damage occasioned by the use, misuse or abuse of the Cochituate water or bursting of the pipes."

The two clauses last mentioned clearly refer to the water pipes and fixtures in the premises leased to the plaintiff, and sufficiently protect the lessor from any risk of damage by the bursting of such pipes.   If the purpose of the provision we are considering was merely to exempt the lessor from liability for damage caused by the leakage or bursting of water pipes within the leased premises, it is entirely superfluous and useless.

These considerations lead to the conclusion that it was the intention of the parties to this lease, to exempt the lessor from liability for any loss or damage to the plaintiff's property, which might be caused by the use or abuse of the Cochituate water, or by the leakage or bursting of the water pipes in any part of the building.   The defendant contends that she would not be liable to the plaintiff if there had been no special agreement exempting her, but the view we have taken renders it unnecessary to consider this question.                              *Exceptions sustained.*