JACOB J. KIRSHENBAUM, Respondent, *v.* GENERAL OUTDOOR ADVERTISING COMPANY, INC., Appellant, and ELIZABETH W. CHAPMAN, Appellant and Respondent.

(Argued January 6, 1932; decided March 3, 1932.)

*Richard T. Greene, Daniel S. Murphy* and *Vincent W. Farley* for General Outdoor Advertising Company, Inc., appellant. The complaint should be dismissed because the lease between plaintiff and the defendant owner absolved the latter from liability. (*Matter of Loew's Buffalo Theatres, Inc.*, 233 N. Y. 495; *Heller* v. *Pope*, 250 N. Y. 132; *First Nat. Bank* v. *National Surety Co.*, 228 N. Y. 469; *Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162; *Weinberg & Holman, Inc.*, v. *P. W. Ins. Co.*, 254 N. Y. 387; *Marcus* v. *United States Casualty Co.*, 249 N. Y. 21; *Benton* v. *Safe Deposit Bank*, 255 N. Y. 260; *Hamilton Emp. Service, Inc.*, v. *N. Y. Tel. Co.*, 253 N. Y. 468; *Gaita* v. *Windsor Bank*, 251 N. Y. 152; *Graves* v. *Davis*, 235 N. Y. 315; 236 N. Y. 507; *Westinghouse, Church, Kerr & Co.* v. *L. I. R. R. Co.*, 160 App. Div. 200; 216 N. Y. 697; *Anderson* v. *Erie R. R. Co.*, 223 N. Y. 277; *Hirsch* v. *Radt*, 228 N. Y. 100.)

*Manfred W. Ehrich* and *Benjamin M. Robinson* for Elizabeth W. Chapman, appellant and respondent. A tenant's contract with his landlord that the latter should not be responsible for damage resulting to the tenant from the landlord's failure to repair, is valid and enforcible. (*Waterside Holding Corp.* v. *Task*, 253 N. Y. Supp. 183.)

*J. W. Friedman* and *I. Gainsburg* for respondent. The terms of the lease do not absolve the landlord from liability. (*Drescher Rothberg Co.* v. *Landeker*, 140 N. Y. Supp. 1025; *Kessler* v. *The Ansonia*, 253 N. Y. 453; *Peats Co.* v. *Bradley*, 166 App. Div. 267; *Rauth* v. *Davenport*, 60 Hun, 70; *Levin* v. *Habicht*, 45 Misc. Rep. 382; *Randolph* v. *Feist*, 23 Misc. Rep. 650; *Sacher* v. *Murray Lenox Land Co.*, 171 N. Y. Supp. 216; *Lewis Co.* v. *Metropolitan Realty Co.*, 112 App. Div. 385; *Botwin* v. *Rothkopf Realty Co.*, 128 Misc. Rep. 15; *Garrity* v. *Propper*, 209 App. Div. 508; *Kuperschmid* v. *Tauszig*, 124 Misc. Rep. 548; *Lowry-Feffer* v. *Mor-Ro Realty Corp.*, 223 App. Div.

621; *Candia & Co.* v. *Rubin,* 209 App. Div. 357; *Robertson* v. *Ongley Electric Co.,* 146 N. Y. 20; *Coggs* v. *Bernard,* 2 Ld. Raymond, 909; *Glanzer* v. *Shepard,* 233 N. Y. 236; *Siegel* v. *Spear & Co.,* 234 N. Y. 479; *Marks* v. *Nambil Realty Co.,* 245 N. Y. 256.)

KELLOGG, J. The plaintiff was the occupant of a store in a one-story building under a lease from the owner, the defendant Chapman. The landlord retained possession of the roof of the building and thereafter rented the same to the defendant General Outdoor Advertising Co., Inc. That defendant, as permitted by the lease, erected upon the roof a framework, from which to display advertisements for its customers. Thereafter, on several occasions, rain collected upon the roof, and, seeping through, dripped into the plaintiff's store. The plaintiff tenant notified the defendant landlord, who made repairs. The roof continued to leak, and, finally, in a heavy rainstorm, water came through in great quantities, seriously damaging merchandise piled upon shelves in the tenant's store. This action was thereafter brought by the tenant to recover damages alleged to have resulted from the landlord's negligence in failing adequately to repair the roof. The landlord, the defendant Chapman, served an answer on the General Outdoor Advertising Company, in which, among other things, she asserted liability on the part of that defendant, under an indemnity clause contained in the lease to it, to make reimbursement for all payments of damages which the defendant landlord might be required to make to the plaintiff, or other persons, arising by reason of defects in the roof occupied by it. The jury found the defendant landlord guilty of negligence and awarded the plaintiffs substantial damages. Judgment followed against the defendant Chapman in favor of the plaintiff, and against the defendant General Outdoor Advertising Company in favor of the defendant Chapman. That judgment has been affirmed.

The lease to the plaintiff from the defendant Chapman contained a clause exempting the latter from all liability to the former for any injury to person or property " caused by or resulting from steam, electricity, gas, water, rain, ice or snow which may leak or flow from or into any part of said building," and this " whether the said damage or injury shall be caused by or be due to the negligence of the landlord, the landlord's agent, servant, employee or not." The trial judge held that this clause did not apply, and instructed the jury that, if the landlord, after receiving notice of the leaks, did not reasonably and seasonably make repairs, she was liable to the tenant for damages occasioned by the omission. The defendant took exception to this charge and requested the court to charge as follows: " Will your Honor charge the jury that under the provisions of Section 16 of the lease to the plaintiff, the defendant Chapman was absolved from liability either for her own negligence or the negligence of her agents? " The court declined so to charge. It likewise denied a motion, made at the close of the evidence, that the complaint be dismissed.

In *Kessler* v. *The Ansonia* (253 N. Y. 453) we dealt with the question of liability, on the part of the owner of an apartment house, for injury done to personal property stored in the rooms of a tenant, through the escape of steam from radiators designed to heat the rooms. In that case the lease provided: " That the lessor shall not be liable for any damage to any property, at any time, in said premises or building, by leakage of Croton or other water, steam or gas, from or into any part of said building in which the demised premises are situated." (227 App. Div. 290, 291.) The tenant had informed the landlord that steam was escaping. " Nothing was done, although the defendant had been given timely warning and knew of the defective piping " (p. 455). We held, citing the words of Judge LEHMAN in *Drescher Rothberg Co.* v. *Landeker* (140 N. Y. Supp. 1025),

that the immunity clause meant merely that the landlord should be exempt from liability for damage caused " by wear and tear, or inherent defects, or the action of the elements," but that it did not " exempt him from his liability to repair actual defects, when called to his attention, or from acts of affirmative negligence " (p. 455). We have here a very different clause providing for immunity. The landlord was to be exempt whether or not " the said damage or injury shall be caused by or be due to the negligence of the landlord, the landlord's agent, servant, employee or not." Language more comprehensive could hardly be employed. Explicitly it provides that the landlord shall not be liable for damage due to leakage, no matter how negligent the landlord, in respect thereto, may have been. We think that the clause, if it did not contravene public policy, relieved the landlord from any obligation to make repairs which might otherwise have arisen.

" Contracts are illegal at common law, as being against public policy, when they are such as to injuriously affect, or subvert, the public interests. (1 Story Eq. Juris. § 260n; *Chesterfield* v. *Janssen*, 2 Vesey, Sr., 125, 156.) " (Per GRAY, J., in *Johnston* v. *Fargo*, 184 N. Y. 379, 384.) That common carriers cannot secure immunity from liability for damages caused by their negligence is the established doctrine in this country. " The rule rests on broad grounds of public policy justifying the restriction of liberty of contract because of the public ends to be achieved." (Per HUGHES, J., in *Santa Fe, P. & P. Ry. Co.* v. *Grant Bros. Constr. Co.*, 228 U. S. 177, at p. 184.) If such were not the rule all common carriers might exact from passengers and shippers stipulations for immunity, and, in consequence, cease all effort to make the business of transportation reasonably safe, a result which would seriously affect the welfare of all the public. This, because the superior position of the carrier might compel every shipper and traveler to accede to the stipulations. " The

carrier and his customer do not stand on a footing of equality. The latter is only one individual of a million. He cannot afford to higgle or stand out and seek redress in the courts. His business will not admit such a course. He prefers, rather, to accept any bill of lading, or sign any paper the carrier presents; often, indeed, without knowing what the one or the other contains." (Per BRADLEY, J., in *Railroad Co.* v. *Lockwood*, 17 Wall. [U. S.] 357, 379.) It has been held that this rule condemning stipulations for immunity applies only where the subject-matter of a contract made by a railroad company is the carriage of freight or passenger; that it does not apply when the railroad contracts otherwise than as a common carrier, for then: " Those who choose to enter into engagements with it are not at a disadvantage." (*Santa Fe, P. & P. Ry. Co.* v. *Grant Bros. Constr. Co., supra,* at p. 185.) "A tug is not a common carrier of the tow. The owners of a tug may restrict their liability by special agreement. No rule of public policy is involved." (Per POUND, J., in *Graves* v. *Davis*, 235 N. Y. 315, 319.) Stipulations between a landlord and tenant, determining which shall bear a loss arising from non-repair or mis-repair of the tenement, and which shall be immune, are not matters of public concern. Moreover, the two stand upon equal terms; neither the one nor the other is under any form of compulsion to make the stipulations; either may equally well accept or refuse entry into the relationship of landlord and tenant. We think it clear that public policy does not condemn the immunity clause voluntarily agreed upon by these parties.

It is manifest that the judgment must be reversed for the errors of the trial judge in instructing the jury that the landlord, for merely failing adequately to repair after notice given, might be held liable, and for its refusal to charge, when requested, the converse of the proposition. The interesting question is whether or not the action should have been, or should now be dismissed.

A lessor of land who undertakes to make repairs for a tenant though not obligated by the lease so to do, ·and, in making them, through carelessness or unskillfulness, creates insecurity where formerly there was safety, is liable for the damages thereby occasioned. (Am. Law Inst., Re-Statement of the Law of Torts, § 232; *Feeley* v. *Doyle,* 222 Mass. 155; *Gill* v. *Middleton,* 105 Mass. 477; *Pratt, Hurst & Co.* v. *Tailer,* 186 N. Y. 417, 421.) " Of course, it is perfectly plain that the landlords would not be relieved of liability for leakage occasioned by their own action or that of their agents in actually making holes in the roof." (Per WILLARD BARTLETT, J., in *Pratt, Hurst & Co.* v. *Tailer, supra.*) The liability in such case does not spring from a gratuitous undertaking to repair; nor from the relationship of landlord and tenant. The liability is in tort; it attaches to landlords as it would to strangers, having no relationship with tenants, who " create a risk of harm to others," by some positive act. (Bohlen, Studies in the Law of Torts, p. 206; *Riley* v. *Lissner,* 160 Mass. 330.) No such liability may be found here, for there is no proof that the landlord by misrepair made a sound roof leaky, or an unsound roof more defective.

A landlord, who fails of full performance of a gratuitous undertaking to repair, is certainly not liable on contract, for his promise to perform is not supported by consideration paid, and, at least until acted upon by the tenant, may at any time be withdrawn. Nor, without more, would there be a liability in tort. There must be present an element of misrepresentation by the landlord and a reliance thereupon by the tenant. If a prospective bailee of merchandise has carelessly asserted that the goods have arrived and have been stored in a particular warehouse, so that the bailor, relying upon the statement, has insured them therein, when, in point of fact, the goods upon arrival were elsewhere stored, with the result that when the goods are destroyed by fire all insurance is lost, the

prospective bailee is liable for the damage resulting. (*International Products Co.* v. *Erie R. R. Co.*, 244 N. Y. 331.) Similarly, a landlord, gratuitously making repairs for a tenant, and not fully performing his undertaking, is liable for a loss resulting from non-repair, if he has, by abandoning the work as finished, given a false assurance that the premises are in complete repair, and the tenant has placed full reliance thereupon. " The gist of the defendant's wrong is the misleading quality of his conduct and words." (Bohlen, Studies in the Law of Torts, p. 212.) " It is the duty of one choosing to perform a gratuitous undertaking to take care lest he should mislead his promisee into the belief that the work has been well done and the premises made safe for use." (Idem, p. 224.) There is liability if the making of the repairs gives the premises " a deceptive appearance of safety and so leads the tenant or others in his right to use the land in a way which but for the repairs they would recognize to be dangerous." (Re-Statement, Law of Torts, § 232.) It is sufficient to create liability if the making of the repairs has " cloaked the defect, dulled the call to vigilance, and so aggravated the danger." (Per CARDOZO, Ch. J., in *Marks* v. *Nambil Realty Co.*, 245 N. Y. 256, 259.) The question, then, is whether or not we have a case of misrepresentation by conduct and reliance thereupon.

On May 26, 1927, the roof of the building leaked and water · dripped from the ceiling of the plaintiff's store. On that day the plaintiff wrote the agent of the landlord complaining of the leakage and demanding that repairs be made. The agent said that he would make the repairs. Two days later men appeared to repair the roof, did some patching and departed. Before leaving they were asked if they could not stop the leaking so the plaintiff would have no more trouble. They replied that they could not promise it; that " they were allowed a few dollars at a time to patch it up, and while those patches

would hold for a time, they wouldn't prevent the roof from leaking." This statement was reported to the landlord's agent who stated that he would make repairs to cure the trouble. Nothing more was done before June fourteenth. On that day, water again leaked through the roof, and dripped from the ceiling of the plaintiff's store. The plaintiff again wrote the agent reporting the leakage and saying, " This was supposed to be fixed, but as yet it has not been done." The agent was asked if he would not make repairs so that the leakage would stop and he said that he would. On examination it was discovered that there were cracks in the tar covering the platform upon which the signs had been erected; that there was an opening in the platform thirty inches long by four inches wide; that there were cracks at the base of the platform. Men came to repair the roof; stayed twenty minutes; and then left, saying that they could not fix the roof and could only patch it, since they were only allowed a few dollars for the work. Upon an examination of the roof, the same cracks were observed which had been seen before. Nothing was done to make further repairs, although the agent was requested to make them. On August twenty-seventh rain water again came through the roof, the condition of the roof was a little worse, and the agent was so advised. No one called to make further repairs. On September first great quantities of water leaked through upon the plaintiff's merchandise, causing the damage for which the plaintiff seeks to be compensated.

It will be observed that the landlord never assured the plaintiff, by the conduct of herself or her employees, that the work of repair had been well done. On the contrary, the men employed told the plaintiff that the repairs were insufficient to stop the leaks except temporarily. This was said by them on the occasion when the last repairs were undertaken to be made, and that was in June, nearly three months before the leakage of which the plaintiff complains. Not only that; the plaintiff was

perfectly well aware that the repairs were insufficient, for an examination made of the roof in June, after the repairs had been made, disclosed the same open cracks which had been observed before. The defendant landlord never thereafter made or started to make any further repairs. There was, therefore, nothing in the conduct of the defendant which gave assurance to the plaintiff that further leakage would not occur, and no reliance was placed upon any such assurance by the plaintiff. It is useless, therefore, to direct a new trial, so that the case might be tried out upon a theory of misrepresentation by conduct, since the evidence presently before us gives no indication that liability upon such a theory might be established.

The judgment in favor of the plaintiff against the defendant Chapman should be reversed and the complaint dismissed, and the judgment in favor of the defendant Chapman against the General Outdoor Advertising Co., Inc., should be reversed, and the claim against it dismissed, with costs to the defendant Chapman against the plaintiff in all the courts.

CRANE, J. (dissenting). Elizabeth W. Chapman made a lease dated August 21, 1925, to Jacob J. Kirshenbaum, of the store and cellar known as 369 East Fordham road, in the borough of The Bronx, city of New York, for a term commencing September 15, 1925, to the end of August 31, 1928, at an annual rental of $3,000. The store was one of a row of one-story buildings known colloquially as " taxpayers," and numbered 365, 367, 369, 371 and 373, all owned by Mrs. Chapman. Three sixty-nine, leased to Kirshenbaum, was the center store, with no access to the roof. Although the store and cellar constituted the whole of the building, the control and possession of the roof were retained by the landlord. In the lease therefor there ran this provision: " The landlord also reserves the right to place upon the top or roof of said premises, or on the side or exterior walls thereof, any electric or other sign or signs for advertising purposes

and such rights shall belong solely and exclusively to the landlord."

On September 18, 1926, Elizabeth W. Chapman leased to the General Outdoor Advertising Co., Inc., a New Jersey corporation, the entire roof of the building, known as 365 to 373 Fordham road, at $1,200 a year, for the erection of advertising signs. Thereafter, the lessee, under this lease, erected over Kirshenbaum's store a sign fourteen feet high, weighing 14,455 pounds, fastened through the roof to the beams of the building. The General Outdoor Advertising Co., Inc., made this covenant with the landlord: " The Tenant does hereby undertake and agree on and after the day it constructs and maintains its signs and not otherwise, for and during the term of this agreement to make all necessary repairs to the entire roof of said building at its own expense and to keep the said roof in good order and repair throughout the term. * * *

" The Tenant shall indemnify and save harmless the landlord from all liability however arising to any and all persons whomsoever, whether for personal injuries or otherwise, by reason of the erection, maintenance, operation, unsafety of condition of any sign or signs or any part thereof, or any device or appliance used in connection therewith, and from any damage or injury resulting to any persons whomsoever from defects in or defective condition of that portion of the roof controlled by the Tenant."

Kirshenbaum, the tenant of No. 369, maintained a store for the sale of women's dress trimmings, piece goods, draperies and lamp shade trimmings, and had considerable stock on hand. In May of 1927 the roof commenced to leak and do damage to the tenant's goods. The owner or her agents were notified, and thereupon men were sent by the General Outdoor Advertising Co., Inc., to make repairs. Their statements that insufficient money had been furnished to do the repairs properly was reported

to the owner or her agents. The same thing happened again in June and in August, the owner being notified, and undertaking to make the repairs. Finally, on September 1st, water accumulating to the depth of six or seven inches upon the roof, broke through in many places, flooded the store and did the damage for which this action has been brought.

Because the General Outdoor Advertising Co., Inc., is liable on its covenants, above quoted, to the landlord, for any loss sustained by the landlord, through defective roofing or insufficient repairs, we will not make any distinction between these defendants, but hereafter refer to them as " the landlord." If Elizabeth W. Chapman is liable to the tenant, the General Outdoor Advertising Company must pay the damage.

Under the terms of Kirshenbaum's lease, is the landlord liable for the loss sustained? That lease contains the following provision, which is pleaded as an absolute bar to a recovery.

" No Liability.

" *Sixteenth.* As a consideration for the making of this lease the Landlord shall not be liable for any failure of water supply or electric current, nor for injury or damage which may be sustained to person or property by the Tenant or any other person caused by or resulting from steam, electricity, gas, water, rain, ice or snow which may leak or flow from or into any part of said building or from the breakage, leakage, obstruction or other defect of the pipes, wiring, appliances, plumbing or lighting fixtures of the same, the condition of said premises or any part thereof, or through the elevator, if any, or from the street or sub-surface, or from any other source or cause whatsoever, whether the said damage or injury shall be caused by or be due to the negligence of the Landlord, the Landlord's agent, servant, employee or not, nor for interference with light or other incorporeal hereditaments, provided such interference is caused by

anybody other than the Landlord, or caused by operations by or for the City in the construction of any public or quasi-public work; neither shall the Landlord be liable for any defect in the building, latent or otherwise."

The proposition submitted is based upon these established facts: the landlord retained full and complete possession of the roof, making no agreement to repair, and attempting to relieve herself from any and all consequences by reason of the "no liability" clause, above quoted. The tenant made no agreement or covenant to repair the roof and had no rights thereon or access thereto. However, when the event occurred, and the roof sprung a leak, the tenant informed the landlord, and she, for a period of three months, undertook and attempted to make repairs, but failed to do so properly, resulting in loss and damage to the tenant. Who is to suffer the loss?

The language in this "no liability" clause is broader than that of any other case called to our attention. It expressly states that the landlord shall not be liable for any damage sustained by the tenant resulting from water, which may leak or flow from any part of the building, whether the damage shall be caused by, or due to the negligence of, the landlord or her agent. Similar cases there have been where the lease exempted the landlord from any damage or injury by water (*Kessler* v. *The Ansonia*, 253 N. Y. 453); from any damage or injury by water or from the negligence of other tenants (*Levin* v. *Habicht*, 45 Misc. Rep. 381); from damage caused by leakage of water pipes (*Lewis Co.* v. *Metropolitan Realty Co.*, 112 App. Div. 385); from damage by water (*Botwin* v. *Rothkopf Realty Co.*, 128 Misc. Rep. 15); and from damage by water or from any other injury resulting from the negligence of agents or employees (*Garrity* v. *Propper*, 209 App. Div. 508). In *Drescher Rothberg Co.* v. *Landeker* (140 N. Y. Supp. 1025), in which Judge LEHMAN, of this court, wrote the opinion, the exemption was from damage

by water or any other injury resulting from the carelessness or negligence of agents or employees. In all these cases the exemption from liability was strictly and narrowly construed so as to prevent the landlord escaping liability for his own act of negligence or for his failure to repair after actual notice had been received of the defective condition. Mr. Justice GILDERSLEEVE, in *Randolph* v. *Feist* (23 Misc. Rep. 650, 651) used expressions which have been repeated in subsequent cases to the effect that the words " not be liable for any damage caused by leakage of water," referred to leakage which may result from ordinary wear and tear or the carelessness of tenants, but did not refer to the negligence of a landlord in putting on a new roof. So, too, in *Garrity* v. *Propper* (*supra*) the Appellate Division of the First Department stated that the exempting words did not relieve the landlord from his own negligence. So far the courts have not decided that a landlord may exempt himself from liability for his own negl'gence causing damage. The above cases state very frankly that the " no liability " clauses have been narrowly and strictly construed to limit the effect of all such exemptions. (See, also, *Railton* v. *Taylor*, 20 R. I. 279; *Le Vaite* v. *Hardman Estate*, 77 Wash. 320; *Worthington* v. *Parker*, 11 Daly, 545.) *Tuttle Co.* v. *Phipps* (219 Mass. 474) was decided on the authority of *Fera* v. *Child* (115 Mass. 32), a case of passive negligence.

We in this case have a fuller exemption. The words cover damage caused by the negligence of the landlord and his agent's servants and employees. I construe these to mean, as applicable to this case, that if the owner failed to repair, even although she knew of the leaky condition of the roof, there would be no liability. The roof was reserved for the exclusive use of the landlord, and under this " no liability " clause there was no duty upon her part to repair it or keep it in repair for the benefit of the tenants. What rights the tenant had if

the premises, from non-repair, became untenantable, is another question.

But Elizabeth W. Chapman did more than remain passive or indifferent to the condition of the roof. On being informed of the leaks, she or her agent undertook to make repairs, and assured the tenant that the defects had been remedied. The tenant remained after these assurances. Each time of leakage repair men came upon notification. The evidence justified the finding that the tenant relied upon these acts and representations and was not neglectful in trusting the safety and security of the store to the attention of the landlord. That the roof was not properly repaired is apparent from the damage of September first, when six inches of water gathered on the roof, poured through in many places, and damaged a large quantity of the tenant's property.

For the purposes of this argument, the negligence of the landlord in making repairs has been conceded, and we are referred to the "no liability" clause as a full protection against the consequences. That clause was not intended, in our opinion, to cover the circumstances here stated. Whatever protection it may have afforded the owner, from failing or neglecting to act, it did not relieve her from the consequences of work negligently performed. Having undertaken after the lease to voluntarily make the repairs, she was bound to use care. (*Marks* v. *Nambil Realty Co.*, 245 N. Y. 256; *Marston* v. *Frisbie*, 168 App. Div. 666; *Miller* v. *International Harvester Co.*, 193 App. Div. 258.)

This was not the view taken by the trial judge in his charge to the jury. Applying the ruling in the cases above cited, he said that the landlord was liable for her negligence in failing to make repairs after notice of defect. To this an exception was taken. This error was harmless, as both sides admitted that after notice the landlord's agents attempted to make repairs. The entire roof was in the possession of the landlord and the damage was

caused by the negligent manner in which the repairs were made. The work done was not sufficient; having been undertaken, it was not completed. The negligence is not the question before us for review; therefore, this part of the charge is immaterial at this time. The point of the appeal is the effect of the "no liability" clause upon this failure to exercise care in making repairs.

The judgments below should be affirmed, with costs.

CARDOZO, Ch. J., POUND, LEHMAN and O'BRIEN, JJ., concur with KELLOGG, J.; HUBBS, J., votes for a new trial on the ground that the question of defendant's negligence in attempting to repair is a question of fact; CRANE, J., dissents in opinion.

Judgment accordingly.