MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant, *v.* THYRA S. WINSLOW, Respondent.

Supreme Court, Appellate Term, First Department, November 28, 1944.

*A. L. Caccia, Jr.,* and *Louis W. Dawson* for appellant.

*Philip Wittenberg* for respondent.

Judgment affirmed, with twenty-five dollars costs. No opinion.

EDER, J. (dissenting). Plaintiff appeals from a judgment for defendant rendered after trial. The action is for rent of an apartment under a written lease; the defense is constructive eviction, viz., that the continued presence of mice rendered the premises untenantable. The parties, in paragraph " 10 " of the lease, expressly stipulated that the " Landlord or landlord's agents shall not be liable for the presence of bugs, vermin or insects, if any, in the premises, nor shall their presence affect this lease."

The defendant recognizes that under this provision her liability is absolute and that the defense interposed is an untenable one unless some decisively controlling ground exists which avoids its consequences. This escape from liability, it is claimed by respondent, is to be found in the public policy of this State as exemplified by sections 227 and 234 of the Real Property

Law and by the rulings in *Villa Victoria, Inc.*, v. *Fanning* (157 Misc. 280) and *W. & B. Hosiery Corporation* v. *Kapplow* (158 Misc. 872). An additional contention is advanced that under the ruling in *Barnard Realty Corp.* v. *Bonwit* (155 App. Div. 182) the defense of constructive eviction is maintainable in any event. I am unable to acquiesce in these contentions for as I view the matter it is solely one of contract and involves no element of public policy.

The *Barnard* case (*supra*) appears to me to be without application for it did not present the precise question here in concern; it did not involve the validity or effect of such a clause as that in the case at bar; it is a ruling to the effect that where premises become uninhabitable by reason of noise and intolerable stench arising from the presence of rodents within the walls and ceilings of an apartment there is a constructive eviction; that is all that was considered and decided.

Averting to the matter of public policy I am unable to see that the mentioned provision in the lease is in any manner or sense contrary to public policy. The public policy of New York is to be found in its Constitution, in its laws and in its judicial rulings. (*Glaser* v. *Glaser,* 276 N. Y. 296, 301, 302.) Stipulations of waiver in agreements between landlord and tenant are not per se regarded as offensive to morality. (*Kirshenbaum* v. *General Outdoor Adv. Co.,* 258 N. Y. 489, 495.) As aptly remarked in the *Kirshenbaum* case (*supra*): "Stipulations between a landlord and tenant, determining which shall bear a loss arising from non-repair or mis-repair of the tenement, and which shall be immune, are not matters of public concern. Moreover, the two stand upon equal terms; neither the one nor the other is under any form of compulsion to make the stipulations; either may equally well accept or refuse entry into the relationship of landlord and tenant. We think it clear that public policy does not condemn the immunity clause voluntarily agreed upon by these parties."

Public policy is the criterion by which the courts condemn contracts as offensive to the public will or as being subversive of the public welfare. This is a simple prescription; within it I perceive of nothing in sections 227 and 234 of the Real Property Law which declares the above-quoted provision of the lease to be offensive to our public policy. Section 227 does not denounce as invalid and unenforcible an agreement of the nature under consideration; it is entitled " *When tenant may surrender premises,*" and provides that where any building, which is leased or occupied, is destroyed or so injured by the

elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has l een made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied, and that he is not liable for rent for the time subsequent to the surrender. It is held that if an express agreement to the contrary has been made, it is valid and enforcible. (*Friedlander* v. *Citron,* 140 App. Div. 489.) That provision of the statute is wholly inapplicable here, both in point of fact and of law.

Section 234 relates to and deals with agreements exempting lessors from liability for negligence and declares them to be void and unenforcible; it is a statutory declaration of public policy with respect to such agreements; it has no relevancy to the clause of the lease which is the subject of assault here; as to this particular clause there is no statutory declaration of public policy for section 227 does not censure it.

*Villa Victoria, Inc.,* case (157 Misc. 280, *supra*) and *W. & B. Hosiery Corporation* case (158 Misc. 872, *supra*) likewise did not involve such a clause in a lease; the court there was considering the effect of a provision which would release the landlord from all claim for damages, regardless of the manner caused, including violations of positive duties and obligations imposed upon him by statute, and was considering, particularly, the duties and obligations imposed upon him by the provisions of the Multiple Dwelling Law. The court took the position that such a provision in the lease would not be enforced because to give it recognition would be sanctioning a circumvention by the landlord of positive duties and obligations imposed upon him by law and thereby deprive the tenant of a defense of constructive eviction. There is logic to support the stand. However, those cases were dealing with questions of negligence and damage and of the landlord's endeavor, by the inclusion of such a clause in the lease, to relieve himself of all responsibility regardless of his negligence. We have no such situation here.

In the instant case we are dealing with an express contract, not per se in any way offensive to good morals, or obnoxious to any public policy, so far as I am aware, whereby the defendant, as tenant, specifically agreed that in the event of the presence of vermin in the apartment that fact should not affect the lease. There was no compulsion on the part of the defendant to enter into this covenant; it was her free choice to accept or reject it. Having elected to accept, I do not quite understand

how she can be later permitted to object to its enforcement. It was an inducing cause, one which influenced the action of the landlord in letting the premises to the defendant and she should, in justice, be as much bound thereby, as by every other provision in the lease, to like extent that the landlord is bound thereby.

In spite of this express agreement of the parties the court below has held that the presence of rodents in the apartment constituted a constructive eviction exempting the defendant from the payment of rent and justifying the abandonment by her of the premises and the majority of this court is of the view that in the circumstances the enforcement of this covenant would be contrary to public policy.

As I have pointed out there is no such declaration of public policy in section 227 of the Real Property Law and the quoted excerpt from the *Kirshenbaum* case (258 N. Y. 489, *supra*) seems to me to be adequate indication that the Court of Appeals regards such an agreement, in the absence of a statutory denunciation, as an entirely valid and enforcible contract.

It has been repeatedly held that a defense of constructive eviction may be waived by the conduct of the tenant; that being so, I am unable to understand why such a defense may not be similarly waived by the express agreement of the tenant, in the absence of any statute or public policy forbidding it (*Butler* v. *Kidder et al.*, 87 N. Y. 98). Such a clause amounts to simply " a waiver of a rule of law " which a party might otherwise invoke for his benefit; and " The protection of such a rule may be waived by the party whom it would otherwise protect, in a civil case where the waiver involves no question of morality or public policy " (*Metropolitan Life Ins. Co.* v. *Stimpson*, 28 App. Div. 544, 547).

If in the case of destruction or major injury to demised premises the defense of eviction can be waived by the express written agreement of the parties, how much stronger is the case where the constructive eviction claimed does not involve any of these major factors but only subordinate ones? I see no basis for any logical distinction between the one case and the other, assuming, *arguendo,* section 227 of the Real Property Law to be applicable to the case at bar, though I am of the opinion that it has no application here at all.

The distressing plight of the defendant is not to be avoided by sympathetic considerations; the condition in which she finds herself is one of her own choosing; in the disposition to be made we are to be controlled by definite and well-settled rules of law

which govern the matter; she voluntarily assumed a risk and cannot be permitted to escape her liability, unless, as it seems to me, we are willing and prepared to ignore and disregard the law of contract. We have merely a simple case where a tenant took a chance, assumed a risk and made a bad bargain, nothing more. There is no claim of fraud or imposition as respects the execution of the lease; indeed, before the defendant signed it she first submitted it to her lawyer for his examination and approval. She signed, knowingly and understandingly, and must bear the loss. In my opinion, to hold otherwise is to render solemn obligations nugatory and written instruments a meaningless procedure. I cannot subscribe to such a result.

The judgment appealed from should be reversed, with costs, and judgment directed for plaintiff for the sum of $540, with interest thereon, as demanded, with appropriate costs in the court below.

McLaughlin and Hecht, JJ., concur in decision; Eder, J., dissents in opinion.

Judgment affirmed.