OPINION OF THE COURT
Michael Wollin, J.
This is a motion for summary judgment by the defendant, Automatic Burglar Alarm Corp. (Company), to dismiss the complaint of plaintiff Ali El Chami (Chami) on the ground that the cause of action lacks merit. (CPLR 3212, subd [b].)
Chami claims to be a recent immigrant, lacking knowledge of the English language, engaged in his first business venture and deals with electric products.
The Company is engaged in the business of supplying varied protective security services.
On April 21, 1978, Chami and Company entered into a written agreement for the installation and maintenance of a burglar alarm system at the cost of $20 per month and if liable for damages, limiting itself to the maximum of six months’ service charges. The parties agreed that the Company would inspect for any defect in the electrical system upon notification in writing or by telephone and Chami *560 does not claim notice. A photocopy of the agreement is attached to the motion papers. It contains an exculpatory clause which proscribed liability as follows: “In view of the nature of this service and the factors involved in and incident to its operation, and in consideration of the service charge set forth above, it is mutually agreed that the Company is not an insurer of persons, life, limb or property, and that payments hereinbefore named are based solely upon the value of the services herein described, and it is not the intention of the parties that Company assume responsibility or be liable to anyone whomsoever for the death of or injury of any person, or for any loss or damage which may at any time be occasioned solely or in part by or because of the improper working of any equipment, device or connecting circuit, or by or because of the failure of a signal to be received at the Central Station, if such service is contracted for or by the malfeasance or misfeasance in the performance of the services under this contract or for any loss or damage sustained through burglary, theft, robbery, fire or other cause, or by or because of any negligent act or negligent failure to act on the part of the Company, its employees or agents or for loss or damage by or because of non-performance or delay caused by strikes of the company’s employees or the employees or others or by or because of other labor disturbances, riots, war authority of law, or acts of God or the public enemy, (or any liability on the part of Company by virtue of this Agreement or because of the relation hereby established.) ”
The contract further states as follows: “If there shall, notwithstanding the above provisions, at any time be or arise any liability on the part of Company by virtue of this Agreement, or because of the relation hereby established, whether due to negligence of company, its employees or agents or otherwise, such liability is and shall be limited to a sum equal in amount to the rental service charge hereunder for a period of service not to exceed 6 months which sum will be paid and received as liquidated damages. Such liability as herein set forth is fixed as liquidated damages and not as a penalty and this liability shall be complete and exclusive.”
The Company utilized the existing wiring on the premises *561 and its own equipment was partially attached to the building wall without relinquishing the ownership.
On July 24,1980, Chami was burglarized through a wall equipped with sonic devices installed by the Company. The alarm was not released and neither the police department nor Chami were alerted.
Chami sustained an alleged loss of $10,000 of electric equipment.
The indorsed complaint alleges the negligence in the installation and maintenance of a defective burglar alarm. Encapsulized, the answer denies the allegations and inters poses an affirmative defense of release and restricted liability.
Chami relies strongly on section 5-323 of the General Obligations Law, effective September 27,1964, which reads as follows:
“Agreements exempting building service or maintenance contractors from liability for negligence void and unenforceable
“Every covenant, agreement or understanding in or in connection with or collateral to any contract or agreement affecting real property made or entered into, whereby or whereunder a contractor exempts himself from liability for injuries to person or property caused by or resulting from the negligence of such contractor, his agent, servants or employees, as a result of work performed or services rendered in connection with the construction, maintenance, and repair of real property or its appurtenances, shall be deemed to be void as against public policy and wholly unenforceable.”
It is further contended that the leading cases on the subject would have been determined otherwise if the statute was in effect and that later cases misapplied the law.
The court believes that counsel’s confidence is misplaced and the statute is clear and inappropriate in the instant proceeding. A burglar alarm system which is leased to Chami, is no more an appurtenance of real property than a telephone, both serving diverse purposes. Admittedly, subsequent decisions are consistent with their precursors.
*562 Equally significant are companion statutes of the General Obligations Law, e.g., sections 5-322, 5-322.1, 5-324, 5-325, which were passed to shield the public from abuse. Each statute serves particular needs for those least able to effectively fend for themselves but it demonstrably limits their respective protective purposes. Neither cases nor statutes sustain the contention of Chami but are per contra.
Likewise, the argument of the Company that it is not in the insurance business does not appeal to this court. If this rationale was real, an offender could insulate itself from all liability including tort, malpractice, and product liability by exculpatory clauses.
But it cannot be gainsaid, that the Company, as well as Chami, could have obtained insurance to protect themselves from the contingencies of negligence and burglary respectively. This court is not unmindful that the costs of the product and service would be appreciably increased, but having chosen a field with a present societal risk; wisdom compels coverage to contain catastrophe.
The court is also concerned with the lament of the Company, that it has thousands of accounts, since many of them have entered into a contract which offers little comfort excluding liability and limiting it at best to six months’ service charges.
Unfortunately, this court is restricted by the uniformity of decisions. In Ciofalo v Vic Tanney Gyms (10 NY2d 294, 297) Justice Froessel, writing for the court, stated: “The wording of the contract in the instant case expresses as clearly as language can the intention of the parties to completely insulate the defendant from liability for injuries sustained by plaintiff by reason of defendant’s own negligence, and, in the face of the allegation of the complaint charging merely ordinary negligence, such agreement is valid.”
Unless the agreement affects a public interest, e.g., a common carrier, public utility, conditions imposed by employment, the court will not invalidate one of mutual intention.
As long as public policy is not contravened, the courts have upheld immunized agreements absent public interest, *563 undue influence, fraud or duress. In Kirshenbaum v General Outdoor Adv. Co. (258 NY 489, 495), the court said: “We think it clear that public policy does not condemn the immunity clause voluntarily agreed upon by these parties.”
In H. G. Metals v Wells Fargo Alarm Servs. (45 AD2d 490, 493) in a similar burglar alarm agreement the court held: “Lastly, the contract between the parties contained a clause limiting defendant’s liability in case of breach. This is a matter of defense and the effect of this clause is therefore not before us at this time. The question was, however, briefed and argued before us and we can see no reason why the clause should not be given effect”.
Finally, in Saint Vincent’s Med. Center of Richmond v Vincent E. Iorio, Inc. (78 Misc 2d 968, 972) the court in interpreting a burglar alarm agreement stated: “Finally, the court finds abhorrent the situation in which a party proffers a contract containing a provision, clear and unequivocal on its face, and later, having brought action seeking affirmative relief, argues that the provision is void and unenforceable.”
The court fails to find relief in the cited statute or in case law to deny the motion.
Since both parties must lay bare their evidence, the court finds the agreement without infirmities and the absence of liability of the Company.
Motion granted.