[863 NE2d 585, 831 NYS2d 364]

J.A.O. Acquisition Corp. et al., Appellants, v Jeffrey D. Stavitsky et al., Defendants, and First Union National Bank, Formerly Known as CoreStates Bank, N.A., Respondent. (And a Third-Party Action.)

Argued January 2, 2007; decided February 13, 2007

## POINTS OF COUNSEL

*Fischer Porter & Thomas, P.C.*, New York City (*Jay D. Fischer, Arthur L. Porter, Jr.,* and *Matthew L. Seldin* of counsel), for appellants. I. Liability for negligent misrepresentation to nonprivy parties under the *Credit Alliance Corp. v Arthur Andersen & Co.* (65 NY2d 536 [1985]) test is not restricted to certain categories of defendants. (*Glanzer v Shepard,* 233 NY 236; *Ultramares Corp. v Touche,* 255 NY 170; *European Am. Bank & Trust Co. v Strauhs & Kaye,* 65 NY2d 536; *Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 135 AD2d 518, 73 NY2d 417; *Crossland Sav. FSB v Rockwood Ins. Co.,* 692 F Supp 1510; *Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood,* 80 NY2d 377; *Parrott v Coopers & Lybrand,* 95 NY2d 479; *White v Guarente,* 43 NY2d 356; *First Union Natl. Bank v Tecklenburg,* 2 AD3d 575; *Carver Fed. Sav. & Loan Assn. of N.Y. v Glanzer,* 186 AD2d 706.) II. The amount of evidence necessary to demonstrate the "necessary link" to defendant's understanding of a nonprivy plaintiff's reliance should be determined on a qualitative not quantitative basis. (*Credit Alliance Corp. v Arthur Andersen & Co.,* 65 NY2d 536; *Security Pac. Bus. Credit v Peat Marwick Main & Co.,* 79 NY2d 695; *Ultramares Corp. v Touche,* 255 NY 170; *White v Guarente,* 43 NY2d 356; *Parrott v Coopers & Lybrand,* 95 NY2d 479; *Securities Inv. Protection Corp. v BDO Seidman,* 95 NY2d 702; *Point O'Woods Assn. v Those Underwriters at Lloyd's, London Subscribing to Certificate No. 6771,* 288 AD2d 78; *Glanzer v Shepard,* 233 NY 236.) III. The evidence presented in opposition to CoreStates Bank, N.A.'s motion for summary judgment presents material issues of fact. (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Rodriguez v Parkchester S. Condominium,* 178 AD2d 231; *Robinson v Strong Mem. Hosp.,* 98 AD2d 976; *Palka v Servicemaster Mgt. Servs. Corp.,* 83 NY2d 579; *Kimmell v Schaefer,* 89 NY2d 257; *Brunetti v Musallam,* 11 AD3d 280; *Shea v Hambros*

*PLC,* 244 AD2d 39; *Zuckerman v City of New York,* 49 NY2d 557.)

*Greenberg Traurig LLP,* New York City (*Louis Smith* of counsel), for respondent. I. Plaintiffs failed to establish the elements required for a negligent misrepresentation claim; accordingly, such claim was properly dismissed. (*Credit Alliance Corp. v Arthur Andersen & Co.,* 65 NY2d 536; *Hudson Riv. Club v Consolidated Edison Co. of N.Y.,* 275 AD2d 218; *United Safety of Am. v Consolidated Edison Co. of N.Y.,* 213 AD2d 283; *FAB Indus. v BNY Fin. Corp.,* 252 AD2d 367; *Banque Nationale de Paris v 1567 Broadway Ownership Assoc.,* 214 AD2d 359; *River Glen Assoc. v Merrill Lynch Credit Corp.,* 295 AD2d 274; *Fleet Bank v Pine Knoll Corp.,* 290 AD2d 792; *Polzer v TRW, Inc.,* 256 AD2d 248; *Trustco Bank, N.A. v Cannon Bldg. of Troy Assoc.,* 246 AD2d 797; *Murphy v Kuhn,* 90 NY2d 266.) II. Plaintiffs' fraud claims against CoreStates Bank, N.A. are not supported by the record and thus were properly dismissed. (*Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403; *LaSalle Natl. Bank v Ernst & Young,* 285 AD2d 101; *Lanzi v Brooks,* 54 AD2d 1057, 43 NY2d 778; *Alexander & Alexander of N.Y. v Fritzen,* 114 AD2d 814, 68 NY2d 968; *Matter of Disston Co. [Aktiebolag],* 187 AD2d 283.)

## OPINION OF THE COURT

GRAFFEO, J.

In this action arising out of a stock purchase transaction, we conclude that plaintiff did not raise a triable issue of fact on its negligent misrepresentation and fraud claims against defendant bank. We therefore affirm the order of the Appellate Division dismissing the complaint.

In June 1997, plaintiff J.A.O. Acquisition Corp. entered into an agreement to purchase the stock of D.B. Brown, Inc., a meat and fish distributor, from Jeffrey Stavitsky and W. Paul Brogowski.[1] The agreement listed D.B. Brown's net worth at $2.2 million and, as relevant here, obligated J.A.O. to satisfy D.B. Brown's loans from its bank, defendant First Union National Bank, formerly known as CoreStates Bank, N.A. (CoreStates). Prior to the stock transfer, J.A.O. undertook a due diligence review, finding that D.B. Brown was worth about $1 million less than what Stavitsky and Brogowski had represented. As a

---

1. J.A.O. Acquisition Corp. is a wholly owned subsidiary of plaintiff J.A.O. Holding Company, Inc. These entities will be referred to collectively as J.A.O.

result, J.A.O. and the sellers amended the stock purchase agreement by lowering D.B. Brown's net worth to approximately $1.17 million and providing for a price adjustment to be made within 90 days after the closing, at which time D.B. Brown's net worth as of the date of the closing would be determined.

Chase Manhattan Bank acted as J.A.O.'s primary financier for the transaction. Pursuant to the loan arrangement between Chase and J.A.O., Chase agreed to loan J.A.O. funds sufficient to purchase D.B. Brown's stock, including repayment of D.B. Brown's debt to CoreStates. As a condition of its financing, Chase required J.A.O. and each of its affiliates to demonstrate excess borrowing availability of at least $2 million on the date of the closing. On October 9, 1997, Chase forwarded an outline of the terms of this loan agreement—including the borrowing availability requirement—to CoreStates.

On the afternoon of October 10, 1997, the scheduled closing date, CoreStates sent a payoff letter to D.B. Brown, calculating that D.B. Brown's outstanding liabilities to CoreStates amounted to $26,564,628.29. Earlier that day, checks previously written by D.B. Brown were presented to CoreStates for payment, resulting in a deficiency of about $1.3 million in D.B. Brown's operating account.[2] The debt balance in the payoff letter, however, did not include the $1.3 million as part of D.B. Brown's obligations to CoreStates. That same day, Chase determined that J.A.O. and its affiliated companies had not met the $2 million borrowing availability threshold. To satisfy that prerequisite, Stavitsky invoiced a number of foreign receivables valued in excess of $1 million in order to convince Chase that J.A.O. had complied with the availability requirement. Chase agreed to finance the transaction and the stock transfer was consummated. The following business day, CoreStates requested payment of the $1.3 million from Chase; Chase complied and paid the debt.[3]

J.A.O. commenced this action against CoreStates asserting claims for negligent misrepresentation and fraud. Specifically,

---

**2.** In the months preceding the closing date, D.B. Brown often incurred a negative balance in its operating account and then borrowed against its commercial loan account to cover a particular day's check presentments.

**3.** The financial health of D.B. Brown was tenuous over the next few years. In March 2000, D.B. Brown contracted to sell its assets to another company and, upon doing so, ceased operations. After creditors filed an involuntary bankruptcy petition, D.B. Brown was granted a discharge in bankruptcy in 2001.

J.A.O. alleged that CoreStates misrepresented D.B. Brown's outstanding liabilities by negligently failing to include in the payoff letter the $1.3 million negative balance in D.B. Brown's operating account. J.A.O. contended that it would not have purchased D.B. Brown's stock had it known it would become liable to pay this additional debt to CoreStates, and that Chase would not have agreed to finance the transaction because the $2 million excess borrowing availability requirement would not have been met. Alternatively, J.A.O.'s fraud claim posited that CoreStates intentionally concealed the $1.3 million debt to cause J.A.O. to complete the asset purchase.

CoreStates moved for summary judgment dismissing the complaint, arguing that there was no privity or special relationship between it and J.A.O., the payoff letter was correct in listing only loans and J.A.O. did not reasonably rely on the letter. Supreme Court granted the motion and dismissed the complaint, holding that J.A.O. could not satisfy the privity or reliance elements. The Appellate Division affirmed for the same reasons. We granted J.A.O. leave to appeal.

A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information (*see Parrott v Coopers & Lybrand*, 95 NY2d 479, 484 [2000]; *Murphy v Kuhn*, 90 NY2d 266, 270 [1997]). Assuming that J.A.O. can meet the first two elements, we conclude that J.A.O. failed to raise a triable question of fact as to the reliance requirement because the evidence established that J.A.O.'s decision to purchase D.B. Brown's stock was not dependent upon the payoff letter.

After entering into the June 1997 stock purchase agreement, J.A.O. performed its own due diligence review of D.B. Brown's assets and liabilities, determining that the company was worth less than the amount represented in the agreement. As a result, the parties amended the stock purchase agreement to reflect a lower net worth and negotiated a postclosing price adjustment procedure. Similarly, as the Appellate Division recognized, J.A.O. should have had knowledge that it was not unusual for D.B. Brown to overdraw its operating account. Even before Stavitsky

invoiced a number of questionable receivables,[4] it was evident that J.A.O. strongly desired to complete the transaction. Indeed, J.A.O.'s chief financial officer testified that the amount in the payoff letter had no effect on J.A.O.'s desire to purchase D.B. Brown's stock. It is clear that J.A.O.'s decision to move forward with the deal resulted from its own investigation of D.B. Brown's condition, not any reliance on the information contained in the payoff letter.

Furthermore, J.A.O.'s contention that Chase would have refused to close on October 10, 1997 had it been aware of the additional $1.3 million debt is misplaced. As previously discussed, Chase required that J.A.O. and its affiliated companies have an excess borrowing availability of at least $2 million on the closing date. But in determining whether it would finance the deal, it was Chase (a nonparty to this litigation), not J.A.O., that would have relied on the loan balance in the payoff letter. To the extent J.A.O. continues to press its fraud claim on this appeal, it likewise fails for lack of justifiable reliance.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH and PIGOTT concur; Judge JONES taking no part.

Order affirmed, with costs.

---

4. The foreign receivables were ineligible for inclusion in the borrowing availability calculation because they were not backed by letters of credit.