ALLEY SPORTS BAR, LLC, Plaintiff,

v.

SIMPLEXGRINNELL, LP, Defendant.

No. 13–CV–6579 EAW.

United States District Court, W.D. New York.

Signed Nov. 7, 2014.

Timothy D. Boldt, Ernstrom & Dreste, LLP, Rochester, NY, for Plaintiff.

George G. Mackey, Paul A. Sanders, Hiscock & Barclay LLP, Rochester, NY, Kristi Burmesiter, Shook Hardy & Bacon, Kansas City, MO, for Defendant.

### DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

## I. INTRODUCTION

On September 17, 2013, Plaintiff Alley Sports Bar, LLC ("Plaintiff") filed a complaint against Defendant SimplexGrinnell, LP ("Defendant") in the Supreme Court of Wayne County, New York, alleging the following claims: (1) negligence; (2) gross negligence; (3) breach of fiduciary duty; (4) negligent misrepresentation; and (5) punitive damages. (Dkt. 1–1). Plaintiff claims that Defendant committed these various torts after Defendant's representative failed to properly drain Plaintiff's sprinkler system, causing a significant amount of damage to Plaintiff's bowling alley. (*Id.*). On October 23, 2013, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1446, on the basis of diversity jurisdiction. (Dkt. 1). Presently before the Court is Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. 7).

Because Plaintiff has sufficiently pled that Defendant owed it a common law duty to perform its repairs to Plaintiff's sprinkler system in a reasonable manner and misrepresented that it had made such repairs, Defendant's motion to dismiss as to Plaintiff's second and fourth causes of action for negligence and gross negligence is denied. Defendant's motion to dismiss as to Plaintiff's remaining claims is granted.

## II. BACKGROUND AND PROCEDURAL HISTORY

On February 5, 2013, the dry-pipe sprinkler system at Plaintiff's bowling alley was partially triggered. (Dkt. 1–1 at ¶ 5). The sprinkler system filled with water in anticipation of a fire, but did not discharge the water because there was no fire hazard. (*Id.* at ¶¶ 6–7). On February 5, 2013, Plaintiff called Defendant, a contractor licensed to maintain and repair sprinkler systems, to service the sprinkler system. (*Id.* at ¶ 8).

On February 6, 2013, "Ron," Defendant's representative, reported to the bowling alley to conduct maintenance work on the sprinkler system. (*Id.* at ¶ 9). Ron

returned to the bowling alley on February 7, 2013 to complete the work. (*Id.* at ¶ 10). Plaintiff claims that Defendant never provided Plaintiff with an estimate or proposed contract to complete the maintenance work. (*Id.* at ¶ 11). Ron advised Plaintiff that the sprinkler system was drained as requested, and stated that it took approximately 14 hours to complete the work. (*Id.* at ¶ 13). Plaintiff objected to this time estimate, and verbally negotiated with Ron to reach an agreed work total of eight hours. (*Id.* at ¶¶ 14–16). Ron presented a form to Plaintiff to sign that stated that Ron worked eight hours to service the sprinkler system. (*Id.* at ¶¶ 17–18). Plaintiff alleges that it did not realize, nor did Ron inform Plaintiff, that there was a reverse side to the form which included exculpatory language. (*Id.* at ¶¶ 19, 21, 26).

On February 19, 2013, the sprinkler system pipes burst and water leaked throughout the bowling alley, causing significant property damage. (*Id.* at ¶ 23). On that same day, Defendant sent a representative named "Mark" to inspect the damage. (*Id.* at ¶ 4). Plaintiff claims that Mark acknowledged that Defendant was liable for the damage and stated that he would submit a report to that effect. (*Id.* at ¶ 25). However, Defendant refused to pay for the damages, claiming that Plaintiff had signed a contract exculpating Defendant for Ron's negligent actions. (*Id.* at ¶ 26). Further, Defendant has since demanded that Plaintiff pay for the services rendered by Ron. (*Id.* at ¶ 2).

On September 17, 2013, Plaintiff served a complaint filed in the Supreme Court of Wayne County, New York, on Defendant. (Dkt. 1 at ¶ 1). On October 23, 2013, Plaintiff removed the action to this Court on the basis of diversity jurisdiction. (*Id.* at ¶¶ 4–7). The following day, Defendant filed a motion to dismiss for failure to state a claim. (Dkt. 7, 8).

## III. DISCUSSION

### A. Standard of Review

" 'In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference.' " *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991)). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (internal quotations and citation omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Turkmen v. Ashcroft,* 589 F.3d 542, 546 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff' obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotations and citations omitted). Thus, "at a bare minimum, the

operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir.2008) (alteration in original) (internal quotations and citations omitted).

### B. Contractual vs. Tort Duty

As an initial matter, the parties spent a significant portion of their papers and time at oral argument debating whether the parties had entered into a contract and whether a contractual relationship existed between the parties.[1]

With the papers before the Court, there is no contractual relationship to consider. Plaintiff does not allege that a contract existed. In fact, Plaintiff specifically alleges that no contract existed between the parties, and proceeds to state five causes of action based on tort law. (Dkt. 1–1 at ¶ 29); *see McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007) ("In general, our review is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."). Although Plaintiff has attached the document that Defendant alleges is a contract to its complaint, Plaintiff asserts that this document is merely a "form document," that Plaintiff did not agree to the terms on the reverse side of the "form document," and that the parties "did not, at any relevant time, enter into a binding contract...." (Dkt. 1–1 at ¶¶ 20–21, 27–29).

Admittedly, in its opposition papers, Plaintiff requests the opportunity to plead a breach of contract action in the alternative, or to stay the present action to permit Plaintiff to file a cross-motion to file an amended complaint. (Dkt. 11 at 20–21). However, Plaintiff' request has not been properly made.[2] Accordingly, the Court only considers the sufficiency of the complaint as to Plaintiff' allegations of tort claims, independent of any contractual relationship.

### C. Negligence/Gross Negligence (Fourth/Second Causes of Action)

Plaintiff alleges that Defendant owed it "a duty to perform its work in a workmanlike and skilled manner." (Dkt. 1–1 at

---

**1.** Where there is a contractual relationship, any tort claim must arise out of a duty independent from that of the contractual duty. *See Gordon v. Kaleida Health*, 847 F.Supp.2d 479, 499 (W.D.N.Y.2012) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts, as well as unjust enrichment, implied and quasi contract, and quantum meruit, are generally precluded, *unless based on a duty independent of the contract*.") (internal quotation omitted) (emphasis in original).

**2.** Local Rule of Civil Procedure 15(a) states, in part:
 A movant seeking to amend or supplement a pleading must attach an unsigned copy of the proposed amended pleading as an exhibit to the motion. The proposed amended pleading must be a complete pleading as an exhibit to the motion. The proposed amended pleading must be a complete pleading superseding the original pleading in all respects.
 Further, Local Rule 15(b) states: "[T]he amendment(s) or supplement(s) to the original pleading shall be identified in the proposed pleading through the use of a word processing 'red-line' function or other similar markings that are visible in both electronic and paper format." Plaintiff has requested to amend its complaint within its response to Defendant's motion to dismiss, but has not filed a motion seeking this relief, nor has Plaintiff presented a proposed amended complaint in compliance with Local Rule 15.

¶ 56). According to Plaintiff, Defendant "through its acts and omissions, breached its duty to perform its work in a workman-like and skilled manner ... [this] constitutes negligence." (*Id.* at ¶¶ 57–58). Under its gross negligence claim, Plaintiff alleges that Defendant "performed its work recklessly and with disregard for the consequences of its acts and omissions ... [and] Defendant's reckless acts and omissions in the performance of work on the premises constitutes gross negligence." (*Id.* at ¶¶ 45–46).

### 1. Negligence

■■■ Defendant argues that there is no common law duty for it to properly drain Plaintiff's sprinkler system. (Dkt. 8 at 3). Rather, Defendant asserts, Plaintiff is improperly attempting to avoid a limited liability clause in a contract between Plaintiff and Defendant by pleading a cause of action in tort. (*Id.* at 1–3).[3]

Plaintiff retorts that this case is not one where a system is purchased or installed and then fails to work properly; rather, this is a case where a specialist advised that he performed work "with full knowledge" that he had not fully drained the system. (Dkt. 11 at 17 (citing *Banco Multiple Santa Cruz v. Moreno*, 888 F.Supp.2d 356, 374 (E.D.N.Y.2012) ("[A]n act may be negligent if it is done without the competence which a reasonable man in the position of the actor would recognize as necessary to prevent it from creating an unreasonable risk of harm to another....")).

■■■ In order to sufficiently plead a cause of action under a negligence theory, a plaintiff must allege: (1) "that the defendant had a duty of care to act reasonably to protect against foreseeable risks"; (2) "that the defendant breached that duty of care"; and (3) "that plaintiff's injuries were the proximate cause of the breach." *Levine v. Sears Roebuck and Co., Inc.*, 200 F.Supp.2d 180, 186 (S.D.N.Y.2002).

■■■ New York law places a duty on "persons who undertake to make repairs." *Id.* at 187. "A repairer *may* be liable for injuries caused by the unsafe operation of a device if, in response to a complaint concerning the very same operation which later caused the injury, the repairer undertook to make repairs and negligently failed to inspect to find the actual defect." *Id.* (quotation omitted) (emphasis in original). "Underlying a negligent repair claim is the concern that a repairer will hand over an unsafe product that appears fixed, but which is actually still in an unsafe condition." *Id.*

The issue "is the 'deceptive appearance of safety' which leads the customer to use the instrumentality in a way 'which but for the repairs they would recognize to be dangerous....'" *Id.* at 187 (quoting *Kirshenbaum v. Gen. Outdoor Adver. Co., Inc.*, 258 N.Y. 489, 497, 180 N.E. 245 (1932);[4] *see also Beasock v. Dioguardi Kannegiesser, USA Corp.*, 679 F.Supp.2d 474, 487 (S.D.N.Y.2010).

---

3. "A tort claim will not lie as a means to enforce a contractual bargain, and tort and contract claims can coexist only in limited circumstances. First, a tort claim may survive if it stems from a duty separate from a defendant's contractual duty to perform. Second, a tort claim may survive if it is collateral and extraneous to the contract provision breached. Third, a tort claim may survive if it would yield special damages not recoverable under the contract." *B & M Linen, Corp. v.*

4. In *Kirshenbaum v. Gen. Outdoor Adver. Co., Inc.*, 258 N.Y. 489, 180 N.E. 245 (1932), the New York Court of Appeals held that a landlord was liable for negligence where he undertook a gratuitous repair, gave false assurances that the premises were in complete repair, and the tenant relied on the assurance that the premises were in repair. 258 N.Y. at 496, 180 N.E. 245. "The gist of the defen-

*Enters., Inc.,* 117 A.D.2d 1015, 1015–16, 499 N.Y.S.2d 558 (4th Dep't 1986) (determining defendant tire recapper was potentially liable in negligence where defendant delivered a tire to plaintiff as safe and fit for recapping although it was not, because "[t]he fact that an unsafe tire is turned over by a recapper as rebuilt gives it a deceptive appearance of safety.") (internal quotation omitted); *Wroblewski v. Otis Elevator Co.,* 9 A.D.2d 294, 296–97, 193 N.Y.S.2d 855 (3d Dep't 1959) (finding elevator repairmen could be found negligent if jury believed plaintiff made a specific complaint that an elevator was not working properly, elevator repairmen examined elevator and made assurances that elevator was in working order, and plaintiff relied on assurances, resulting in injury). *Cf. Levine,* 200 F.Supp.2d at 188 (determining no negligence liability where there was no suggestion that dishwasher repairman assured the plaintiff that the dishwasher door was fixed, or that the plaintiff could have been deceived by an appearance of safety due to the visual defects of the door); *Giustino v. Hollymatic Corp.,* 202 A.D.2d 161, 162, 608 N.Y.S.2d 179 (1st Dep't 1994) (finding defendant could not be liable in negligence where plaintiff failed to demonstrate that defendant was negligent in making any of the requested repairs, or that defendant had a contract with plaintiff's employer for routine or systematic maintenance of the machine, stating, "[defendant] as an independent repairer/con-

tractor, had no duty to install safety devices or warn plaintiff's employer of any purported defect.").[5]

■ Although "[a]bsent a routine maintenance contract, a repairer may not be held liable for its failure to inspect a machine for defects unrelated to the problem that it was summoned to correct," *Rutherford v. Signode Corp.,* 11 A.D.3d 922, 923, 783 N.Y.S.2d 735 (4th Dep't 2004) (internal quotation omitted), here, Defendant was summoned specifically for the purpose of resolving the defect in Plaintiff's sprinkler system that ultimately caused the alleged damage to Plaintiff's property.

Defendant asserts that "because no one in the state of New York has a common-law obligation to walk into someone else's business and service a sprinkler system, Alley's negligence claims fail for lack of a common-law duty." (Dkt. 14 at 1). However, here, Defendant did not simply walk into Plaintiff's business to service a sprinkler system; but rather, Defendant was called to perform a service and actively undertook to deliver that service. The Court does not intend to state that a duty arises in every case where a defendant negligently performs repair work. The Court merely finds that, given the procedural posture of this case and the facts as alleged by Plaintiff, which must be taken as true, Plaintiff has sufficiently alleged a duty to survive a motion to dismiss.

dant's wrong is the misleading quality of his conduct and words. . . . It is the duty of one choosing to perform an … undertaking to take care lest he should mislead his promisee into the belief that the work has been done and the premises made safe for use." *Id.* at 497, 180 N.E. 245.

5. The Court notes that this line of cases under the negligent repair theory of liability involve allegations of personal injury as compared to economic loss. Here, Plaintiff has alleged

economic loss. It remains to be seen whether Plaintiff can ultimately prove the existence of a duty and damages under a negligence theory. However, for the purposes of a motion to dismiss, and based on the record before the Court at this stage of the proceedings, Plaintiff's allegations that Defendant owed it some duty to perform its repairs in a reasonable manner after undertaking to make a repair on Plaintiff's premises are sufficiently pled in order for the case to proceed.

"'[O]ne who assumes a duty to act, even though gratuitously, may thereby become subject to the duty of acting carefully.'" *Mirza v. Metro. Life Ins. Co.*, 2 A.D.3d 808, 809, 770 N.Y.S.2d 384 (2d Dep't 2003) (quoting *Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 522, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980)) (reversing New York State Supreme Court's dismissal of plaintiff's negligence claims because defendant security company, despite owing no contractual duty to plaintiff, assumed a duty of care when it gratuitously provided services for a festival and could be liable for negligent acts under the doctrine of *respondeat superior*). "[A] duty arises from the voluntary performance of an act only if the defendant's conduct can be shown to have placed the plaintiff in a more vulnerable position than the plaintiff would have been had the defendant refrained from undertaking the act." *Castiglione v. Village of Ellenville*, 291 A.D.2d 769, 770, 738 N.Y.S.2d 443 (3d Dep't 2002).

Here, Plaintiff alleges that it relied on Defendant's assertion that the sprinkler system was fixed, and was therefore left in a more vulnerable position. Absent Defendant's assertion that the system was repaired, Plaintiff could have consulted another sprinkler repair company to drain the system, thereby avoiding the subsequent damage to Plaintiff's property.

Defendant allegedly breached its duty of care when it failed to repair Plaintiff's sprinkler system after affirmatively stating that it would repair the system and after performing some services on the system. Indeed, Defendant's representative Mark allegedly indicated that the damages were caused by Defendant's error. (Dkt. 1–1 at ¶ 15).

Plaintiff properly alleges that, but for Defendant's failure to adequately drain the system as it promised to do, Plaintiff would not have been injured. Therefore, based on Plaintiff's allegations, Defendant's breach of duty was a proximate cause of Plaintiff's injuries. As a result, Plaintiff has sufficiently pled a duty of care to sustain a claim for negligence to survive a motion to dismiss.

### 2. Gross Negligence

Plaintiff has also sufficiently alleged a claim for gross negligence. "To state a claim for gross negligence under New York law, [Plaintiff] must [allege] four elements: (1) the existence of a duty; (2) a breach of that duty; (3) injury as a result thereof; and (4) conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Purchase Partners, LLC v. Carver Fed. Savings Bank*, 914 F.Supp.2d 480, 497 (S.D.N.Y.2012) (internal quotation omitted).

Here, Plaintiff has alleged that Defendant performed its work "recklessly" and/or intentionally misrepresented the nature of the work performed. (Dkt. 1–1 at ¶ 45). Plaintiff claims that Ron originally represented that he had worked on the sprinkler system for two full workdays, then negotiated the number of hours worked to eight hours, when in fact, Ron did not repair the sprinkler system at all. (*Id.* at ¶¶ 10–18). For the purposes of a motion to dismiss, Plaintiff has at least alleged that Defendant's behavior "smacks" of intentional wrongdoing or "evinces a reckless disregard for the rights of others." Accordingly, Plaintiff has sufficiently pled a claim for gross negligence to survive a motion to dismiss.

### D. Breach of Fiduciary Duty (Third Cause of Action)

Plaintiff alleges that "[a] fiduciary relationship was created between the

Plaintiff and Defendant, a licensed fire alarm installer, when the Defendant, a licensed fire alarm contractor, performed work on Plaintiff's sprinkler system." (Dkt. 1–1 at ¶ 50).

Plaintiff argues "whether a fiduciary relationship exists is fact specific and grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." (Dkt. 11 at 20). Plaintiff suggests that in responding to "a call for assistance dealing with the risks related to a partially triggered sprinkler system, [Defendant] enters that relationship with a heightened level of trust based on its superior knowledge, training, experience and New York State license." (*Id.* at 21). Plaintiff maintains that this heightened duty was breached when Defendant represented that the sprinkler system was drained despite the fact that water remained in the pipes. (*Id.*).

■ "The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Rut v. Young Adult Inst., Inc.,* 74 A.D.3d 776, 777, 901 N.Y.S.2d 715 (2d Dep't 2010).

■ "It is well-settled law that a conventional business relationship does not create a fiduciary relationship in the absence of additional factors." *Faulkner v. Arista Records LLC,* 602 F.Supp.2d 470, 482 (S.D.N.Y.2009) (internal quotations omitted). " 'Generally, an arm's length business transaction, even those where one party has a superior bargaining power, is not enough to give rise to a fiduciary relationship.' " *Id.* (quoting *Sony Music Ent., Inc. v. Robison,* No. 01 CIV. 6415(LMM), 2002 WL 272406, at *3, 2002 U.S. Dist. LEXIS 3100, at *9 (S.D.N.Y. Feb. 26, 2002)).

Plaintiff suggests that the interaction between it and Defendant was not an "arm's length business transaction," but rather, was one grounded in a "higher level of trust." (Dkt. 11 at 16) (citing *EBC I, Inc. v. Goldman, Sachs & Co.,* 5 N.Y.3d 11, 20, 799 N.Y.S.2d 170, 832 N.E.2d 26 (2005)). According to Plaintiff, under the unique facts of this case, Defendant's "superior knowledge, training, experience and New York State license" created a fiduciary relationship. (*Id.* at 17).

■ However, "one party's reliance on another party with superior expertise, by itself, will not suffice to establish a fiduciary relationship." *Vannest v. Sage, Rutty & Co., Inc.,* 960 F.Supp. 651, 656 (W.D.N.Y.1997) (citing *Boley v. Pineloch Assocs., Ltd.,* 700 F.Supp. 673, 681 (S.D.N.Y.1988)). Plaintiff must show that there was a " 'relationship founded upon trust or confidence reposed by one person in the integrity and fidelity of another ... in which influence has been acquired and abused, in which confidence has been reposed and betrayed.' " *Henneberry v. Sumitomo Corp. of Am.,* 415 F.Supp.2d 423, 459 (S.D.N.Y.2006) (quoting *Penato v. George,* 52 A.D.2d 939, 941, 383 N.Y.S.2d 900 (2d Dep't 1976)). "Examples of such informal fiduciary relationships ... include 'priest and parishioner, bank and depositor, majority and minority stockholder, and close friends or family members.' " *Solutia Inc. v. FMC Corp.,* 456 F.Supp.2d 429, 447 (S.D.N.Y.2006) (quoting *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150–51 (2d Cir.1993)). "There is no reason to expand the class of informal fiduciary relationships to include ... parties participating in ... an arms-length transaction." *Id.*

Here, Plaintiff's conclusory allegations of a fiduciary relationship are insufficient. The parties were engaged in an arm's-

length business transaction consisting of a single service call over the course of three days. This does not create a fiduciary relationship, even where one party had superior expertise. (Dkt. 14 at 2). Indeed, if Plaintiff's position was accepted, virtually any business relationship would be transformed into a fiduciary one simply based on one party's expertise or state license. Such a result would run afoul of the well-established concepts regarding fiduciary relationships. As a result, Plaintiff's claim for breach of fiduciary duty is dismissed.

## E. Negligent Misrepresentation (First Cause of Action)

Plaintiff alleges that "a special, privity-like relationship was created between the Plaintiff and Defendant, when the Defendant, a licensed fire alarm contractor, performed work on the Plaintiff's sprinkler system." (Dkt. 10-1 at ¶ 35). Additionally, Plaintiff alleges that Defendant had an obligation to provide correct information to Plaintiff about the work it conducted at the bowling alley, but failed to do so when it stated that the sprinkler system was drained when it was not drained. (*Id.* at ¶¶ 36–37). Plaintiff argues that Defendant "knew or should have known" that Plaintiff would rely on its representations, and that it reasonably did rely on the incorrect information, to its detriment. (*Id.* at ¶¶ 38–39). But for Defendant's misrepresentation, Plaintiff alleges it would not have been damaged. (*Id.* at ¶ 41).

Defendant argues that Plaintiff's claim for negligent misrepresentation must fail because it is based on a contractual agreement for Defendant to drain the sprinkler system, and a claim for negligent misrepresentation may not be premised upon a contractual duty. (Dkt. 8 at 5) (citing *Madison Capital Co., LLC v. Alasia, LLC,* 615 F.Supp.2d 233, 240 (S.D.N.Y.2009)).

For the same reasons that this argument does not justify dismissal of Plaintiff's negligence and gross negligence claims, it does not justify dismissal of Plaintiff's negligent misrepresentation cause of action at this stage of the proceedings.

However, Defendant also maintains that Plaintiff's negligent misrepresentation claim must be dismissed for failure to allege a special relationship, as required by New York law. (*Id.* at 6). Defendant notes that the parties' relationship only lasted for three days, and represented nothing more than a typical buyer-seller relationship. (*Id.* at 7). As such, Defendant argues, there was no special relationship to support Plaintiffs allegations of a "privity-like" relationship. (*Id.*).

Under New York law, negligent misrepresentation occurs where: "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.,* 227 F.3d 8, 20 (2d Cir.2000).

On the face of its complaint, Plaintiff has sufficiently pled elements two through five. However, Plaintiff has not sufficiently pled a special relationship.

In considering this issue, courts should assess (1) "whether the person making the representation held or appeared to hold a unique or special expertise"; (2) "whether a special relationship of trust or confidence existed between the parties"; and (3) "whether the speaker was aware of the use to which the informa-

tion would be put and supplied it for that purpose." *Kimmell v. Schaefer,* 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).

A thorough review of the relevant case law presents varied interpretations as to what constitutes a special relationship to support a negligent misrepresentation claim under New York law. At the most demanding end, there is case law requiring a plaintiff and defendant to have a fiduciary relationship in order to support a claim of negligent misrepresentation. *See Stewart v. Jackson & Nash,* 976 F.2d 86, 90 (2d Cir.1992) ("[u]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty."). Less exacting is the extensive case law requiring the relationship to be "privity-like." *See AHW Inv. Partnership v. Citigroup, Inc.,* 980 F.Supp.2d 510, 524 (S.D.N.Y.2013) ("New York law requires 'the existence of a special or privity-like relationship' between the plaintiff and defendant for a successful negligent misrepresentation claim.") (quoting *Mandarin Trading Ltd. v. Wildenstein,* 16 N.Y.3d 173, 180, 919 N.Y.S.2d 465, 944 N.E.2d 1104 (2011)). However, under the most lenient standard, at least one decision from the Second Circuit Court of Appeals has held that, for pleading purposes, a special relationship of trust or confidence is not required where the plaintiff "emphatically alleges" that the defendant held a unique or special expertise, and that the defendant provided information knowing how that information would be used by the plaintiff. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 188 (2d Cir.2004) ("[A] sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where the complaint emphatically alleges the other two factors enunciated in *Kimmell.*").

It is difficult to reconcile this competing case law. Based on the volume of decisions, it would appear that, under most circumstances, at least a special or "privity-like" relationship is required. Nonetheless, the Court does not need to determine which analysis governs, because Plaintiff has failed to sufficiently plead a claim under any of the three tests.

### 1. Fiduciary Relationship

"The United States Court of Appeals for the Second Circuit has affirmed that 'under New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes her a fiduciary duty.'" *Vannest v. Sage, Rutty & Co., Inc.,* 960 F.Supp. 651, 657 (W.D.N.Y.1997) (quoting *Stewart,* 976 F.2d at 90); *see also Turner v. Temptu Inc.,* No. 11 Civ. 4144(JMF), 2013 WL 4083234, at *8, 2013 U.S. Dist. LEXIS 114298, at *23–24 (S.D.N.Y. Aug. 13, 2013); *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.,* 793 F.Supp.2d 651, 674 (S.D.N.Y.2011); *Thomas v. McLaughlin,* 276 A.D.2d 440, 440, 715 N.Y.S.2d 388 (1st Dep't 2000). As previously noted, Plaintiff has not established that Defendant owed it a fiduciary duty, and so Plaintiff's claim for negligent misrepresentation clearly fails under this most restrictive test.

### 2. Special or "Privity–Like" Relationship

A recent decision from the Second Circuit Court of Appeals held that "[t]o prevail on a claim of negligent misrepresentation under New York law, a plaintiff must show '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 490 (2d Cir.2014) (quoting *J.A.O. Ac-*

quisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 863 N.E.2d 585 (2007)); see also Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 113 (2d Cir.2012) ("New York negligent misrepresentation law requires the existence of a 'special' or 'privity-like' relationship that 'impos[es] a duty on the defendant to impart correct information to the plaintiff.'") (quoting J.A.O. Acquisition Corp., 8 N.Y.3d at 148, 831 N.Y.S.2d 364, 863 N.E.2d 585).

 Under this test, "the standard of a special relationship in the context of a negligent misrepresentation claim is less rigorous than that of a fiduciary duty." Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 28 (S.D.N.Y.2009). However, this interpretation of a negligent misrepresentation claim "normally requires 'either actual privity of contract between the parties or a relationship so close as to approach that of privity.'" DiBartolo v. Abbott Labs., 914 F.Supp.2d 601, 623–24 (S.D.N.Y.2012) (quoting Marcellus Constr. Co., Inc. v. Village of Broadalbin, 302 A.D.2d 640, 640, 755 N.Y.S.2d 474 (3d Dep't 2003)). By this approach, "New York courts do not recognize a cause of action for negligent misrepresentation in the absence of some special relationship of trust or confidence between the parties." Accusystems, Inc. v. Honeywell Info. Sys., Inc., 580 F.Supp. 474, 480 (S.D.N.Y.1984).

The policy to limit negligent misrepresentation claims to "privity-like" relationships also limits the scope of such claims to professional conduct. See Anschutz Corp., 690 F.3d at 112–13 (comparing New York negligent misrepresentation law to California negligent misrepresentation law, which does not require a special relationship).

Here, Plaintiff has made the conclusory allegation that its relationship with Defendant was "privity-like." (Dkt. 10–1 at ¶ 35). This is not supported by the facts as alleged. Granted, Plaintiff relied on Defendant's representative to provide an accurate representation as to the work performed on the sprinkler system. This reliance does not create the requisite level of trust or confidence contemplated by the case law. Otherwise, any business dealing where one party possessed special expertise would constitute a special or privity-like relationship.

 "[A] 'special relationship' requires 'a closer degree of trust between the parties than that of the ordinary buyer and seller in order to find reliance on such statements justified.'" Prime Mover Capital Partners L.P., 793 F.Supp.2d at 674 (quoting Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 788 (2d Cir.2003)). "Courts have routinely held that an arms-length commercial transaction, without more, does not give rise to a special duty to speak with care." Henneberry v. Sumitomo Corp. of America, 532 F.Supp.2d 523, 539 (S.D.N.Y.2007); see also Foxley v. Sotheby's Inc., 893 F.Supp. 1224, 1232 (S.D.N.Y.1995) ("Generally, a special relationship requires prior or ongoing interaction. An arm's length business relationship is not enough.") (citations omitted).

"For example, the relationship between parties could extend beyond the typical arm's–length business transaction where 'defendants initiated contact with plaintiffs, induced them to forebear from performing their own due diligence, and repeatedly vouched for the veracity of the allegedly deceptive information.'" Woori Bank v. RBS Secs., Inc., 910 F.Supp.2d 697, 706 (S.D.N.Y.2012) (quoting Suez Equity Investors, L.P. v. Toronto–Dominion Bank, 250 F.3d 87, 103 (2d Cir.2001)).

By contrast, here, Plaintiff reached out to Defendant for a single service call. Plaintiff does not allege Defendant did

anything to actively dissuade Plaintiff from doing its own investigation to determine that the sprinkler system was not fixed, nor does Plaintiff allege that this single service call was part of any ongoing relationship with Defendant. Instead, the relationship alleged is that of an ordinary buyer and seller—an ordinary arm's-length commercial transaction. As a result, Plaintiff has failed to plead a special or privity-like relationship with the requisite trust or confidence to support a claim of negligent misrepresentation under this second test.

### 3. Unique or Specialized Expertise

Under the most liberal test, "[a] special relationship requires that defendants either '(1) posesse[d] unique or specialized expertise or (2) occupie[d] a special position of confidence and trust with the injured party.'" *Dexia SA/NV v. Bear, Stearns & Co., Inc.,* 929 F.Supp.2d 231, 244 (S.D.N.Y.2013) (quoting *EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F.Supp.2d 265, 281 (S.D.N.Y.2004)).

As a result, under the most liberal test, "[a] sparsely pled special relationship of trust or confidence is not fatal to a claim for negligent misrepresentation where the complaint emphatically alleges the other two factors enunciated in *Kimmell.*" *Eternity Global Master Fund,* 375 F.3d at 188. In other words, assuming a plaintiff has sufficiently alleged that a defendant provided information knowing that it would be used for a certain purpose, if that plaintiff "emphatically" pleads that the defendant held a unique or specialized expertise, then the plaintiff's claim may survive a motion to dismiss under this test.

However, "where the plaintiff has not pled a 'special relationship of trust or confidence,' and where 'the allegations with respect to the other *Kimmell* factors [that is, special expertise and superior knowledge,] are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6).'" *Amusement Industry, Inc. v. Stern,* 786 F.Supp.2d 758, 782 (S.D.N.Y. 2011) (quoting *Eternity Global Master Fund Ltd.,* 375 F.3d at 188) (alteration in original).

Here, Plaintiff's allegations as to two of the three *Kimmell* factors are "soft." As for the unique or specialized expertise, Plaintiff notes that Defendant is a licensed fire alarm contractor. (Dkt. 10–1 at ¶ 35). Indeed, "certain professionals, by reason of their educational training and specialized skill, often have such a duty [to speak with care] imposed upon them." *Henneberry,* 532 F.Supp.2d at 539. "Professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients, and in certain situations we have imposed liability for negligent misrepresentation when they have failed to speak with care." *Kimmell,* 89 N.Y.2d at 263, 652 N.Y.S.2d 715, 675 N.E.2d 450. A licensed fire alarm contractor is simply not such a professional. And although Plaintiff has sufficiently pled facts to support the notion that Defendant knew the purpose of the information it was providing and that the information would be used for that purpose (Dkt. 10–1 at ¶¶ 36–37), Plaintiff has not sufficiently pled that "a special relationship of trust or confidence" existed between the parties. As a result, Plaintiff's claim for negligent misrepresentation must also fail under this third test.

In sum, Plaintiff has failed to allege any facts to suggest that the relationship between Plaintiff and Defendant was any more than that of an ordinary buyer and seller. To find otherwise would contravene the well-established principle that a plaintiff must plead the existence of something more than an arm's-length business

relationship to state a claim for negligent misrepresentation. Here, the facts as alleged demonstrate that Plaintiff and Defendant engaged in an ordinary business transaction over the course of three days. This limited course of dealing does not support the existence of a "special," "privity-like," or "fiduciary" relationship contemplated by the relevant case law. Accordingly, Plaintiff's claim for negligent misrepresentation is dismissed.

### F. Punitive Damages (Fifth Cause of Action)

Plaintiff alleges "[t]he acts and omissions of the Defendant, which caused Plaintiff's injury, were wanton, reckless and done with utter disregard and indifference for the health, safety, and rights of Plaintiff. . . . As such, Plaintiff is entitled to punitive damages. . . ." (Dkt. 1–1 at ¶¶ 61–62).

Defendant argues that punitive damages are inappropriate in this action because "punitive damages are meant to vindicate public rights, not remedy private wrongs." (Dkt. 8 at 9) (citing *Rocanova v. Equitable Life Assur. Soc'y,* 83 N.Y.2d 603, 613, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)).

Plaintiff argues that it is too early to dismiss its claim for punitive damages because Plaintiff alleges an action for "gross negligence and wanton disregard for the Plaintiff, and notwithstanding admissions of liability by its own representatives, SimplexGrinnell has made no attempt to make the Plaintiff whole." (Dkt. 11 at 22). Plaintiff also suggests that punitive damages may be appropriate as to its negligent misrepresentation claim. (*Id.* at 23).

■■■ "[P]unitive damages are a remedy and not a separate cause of action." *Eldridge v. Rochester City Sch. Dist.,* 968 F.Supp.2d 546, 563 (W.D.N.Y.2013); *see also Harrison v. Rubenstein,* No. 02 Civ.

9356(DAB), 2007 WL 582955, at *21, 2007 U.S. Dist. LEXIS 13118, at *61 (S.D.N.Y. Feb. 26, 2007) ("It is clear that there is no separate cause of action for punitive damages for pleading purposes under New York law."). As a result, Plaintiff has improperly pled punitive damages as a separate claim and Plaintiff's claim for punitive damages (Dkt. 1–1 at ¶¶ 61–63), to the extent it is asserted as a separate cause of action, is dismissed. However, this does not mean that Plaintiff is barred from pursuing punitive damages as a form of monetary relief. It just simply may not stand as a separate cause of action.

## IV. CONCLUSION

In accordance with the above findings, Defendant's motion to dismiss (Dkt. 7) is denied as to Plaintiff's second and fourth causes of action for negligence and gross negligence, and it is granted as to Plaintiff's first and third causes of action for negligent misrepresentation and breach of fiduciary duty. In addition, Plaintiff's fifth cause of action is dismissed to the extent Plaintiff attempts to pursue punitive damages as a separate cause of action, but consistent with the reasoning set forth above, Plaintiff may pursue punitive damages as a form of monetary relief.

SO ORDERED.