Xerox Corp. v Travelers Cas. & Sur. Co. of Am. (2024 NY Slip Op 01528)

Xerox Corp. v Travelers Cas. & Sur. Co. of Am.

2024 NY Slip Op 01528

Decided on March 19, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 19, 2024

Before: Moulton, J.P., Friedman, Gesmer, Mendez, Rodriguez, JJ. 

Index No. 653549/19 Appeal No. 1674 Case No. 2023-01013 

[*1]Xerox Corporation, Respondent-Appellant,
v
Travelers Casualty and Surety Company of America, Appellant-Respondent.

Hangley Aronchick Segal Pudlin & Schiller, White Plains (Ronald P. Schiller of counsel), for appellant-respondent.
McGuire Woods LLP, New York and McGuire Woods LLP Atlanta, GA (Anthony P. Tatum of the bar of the State of Georgia, admitted pro hac vice, of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Barry R. Ostrager, J.), entered on or about January 13, 2023, which denied defendant Travelers Casualty and Surety Company of America's motion for summary judgment dismissing the complaint, and denied plaintiff Xerox Corporation's motion for partial summary judgment seeking a determination that the Prior Acts Exclusion does not bar coverage for Xerox's loss under an insurance policy issued to Xerox by Travelers, seeking a finding that Xerox provided sufficient notice under a run-off policy issued by Travelers, and seeking to dismiss certain affirmative defenses set forth in Travelers' answer, unanimously modified, on the law, to grant Xerox's motion to the extent of finding that the Prior Acts Exclusion does not bar coverage and dismissing Travelers' affirmative defense of laches, and to grant Travelers' motion to the extent of dismissing Xerox's third cause of action for negligent misrepresentation, and otherwise affirmed, without costs.
In this insurance dispute Xerox seeks coverage for losses arising from the defense and settlement of several related lawsuits. Xerox invokes two separate Directors and Officers insurance towers. The first of these, comprised of "run off" policies in which Travelers was the second excess insurer, provided coverage for exposure arising from the spinoff of a Xerox entity. Travelers' policy incorporated the terms of coverage of the first excess provider's policy, which stated that there is no coverage for claims "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any [sic] involving any act, error, omission . . . or wrongful act committed or allegedly committed on or after January 01, 2017."
In the second tower, which was in effect from January 1, 2018 to January 1, 2019, the primary insurer was Federal Insurance Company (Chubb), which provided $15 million in coverage. XL Specialty Insurance Company (XL) provided the first layer of excess coverage of $15 million. Travelers provided the next layer of excess coverage, covering losses exceeding $30 million. The Chubb policy contained a Prior Acts Exclusion, stating that no coverage is available for a loss on account of any "Claim . . . based upon, arising from, or in consequence of any fact, circumstance or Wrongful Act committed, attempted, or allegedly committed or attempted in whole or in part prior to January 1, 2017." Travelers' excess policy followed form; accordingly, the parties do not dispute that its policy incorporated the Prior Acts Exclusion.
In March 2017, Xerox began discussions with Fujifilm Holdings Corporation (Fuji) concerning Fuji's possible purchase of Xerox. Carl Icahn and Darwin Deason, Xerox's first and third largest shareholders at the time, opposed the purchase. Among other strategies, Icahn and Deason sought to elect members to Xerox's board in order to derail the purchase.
Deason eventually filed two lawsuits arising from the proposed purchase. In the first [*2]suit he asserted, among other causes of action, breach of fiduciary duty arising from the alleged malfeasance of the Xerox board in undervaluing the company, in improperly supporting Xerox's CEO, and in failing to follow an open bidding process. Among the allegations in the complaint was that Xerox had kept secret a preexisting, nearly 20-year-old, joint venture with Fuji that had "locked up" a "crown jewel" of Xerox, namely Xerox's intellectual property rights in Asia. According to Deason's complaint, the terms of this joint venture had been altered over the years to favor Fuji, resulting in a self-inflicted wound that reduced Xerox's value. The complaint asserted that the joint venture should be unwound in some way in order to enhance Xerox's value before it was put up for sale. Deason added further details concerning the joint venture in an amended complaint.[FN1] In his second suit, Deason again asserted a breach of fiduciary duty claim — this time as a basis to enjoin the deadline for director nominations so that the shareholders would have an opportunity to elect a new board that could reevaluate the sale.
Xerox provided notice of the lawsuits to its insurers in February 2018. The second tower policies, covering 2018-2019, were explicitly cited in the notice communications; the first tower "run off" policies were not. However, after listing the second tower policies, the notices contained a catch-all statement: "This matter is reported under any and all applicable policies whether or not cited."
Xerox settled the two Deason lawsuits in May 2018. Chubb and XL committed their policy limits to the settlement and related defense costs. Neither Chubb nor XL sought to avoid coverage under the Prior Acts Exclusion.
Xerox submitted invoices to Travelers in late 2018 to assert claims to the remaining balance of the settlement and its defense costs. On January 16, 2019, Travelers denied coverage under the second tower on the basis of the Prior Acts Exclusion. In its denial, Travelers averred that the lawsuits fundamentally arose from Xerox's concealed joint venture with Fuji concerning Xerox's intellectual property rights in Asia, which had existed well before January 1, 2017, the operative date of the policies in the second tower. Travelers did not evaluate coverage under the first tower in its denial.
Xerox brought the instant suit in June 2019, initially asserting two causes of action: breach of contract, for Travelers' failure to cover Xerox's losses from the defense and settlement of the lawsuits; and breach of the covenant of good faith and fair dealing, for raising a tardy coverage defense eight months after the settlement of the Deason actions. In an amended complaint, Xerox later added a third cause of action, for negligent misrepresentation or omission, based on Travelers' failure to timely invoke the Prior Acts Exclusion, and on its intimations that it would rely on Chubb's coverage analysis.
Both parties moved for summary judgment. Both [*3]motions were denied by Supreme Court in the decision on appeal.
In its decision, Supreme Court did not discuss the first tower, perhaps because plaintiff did not initially raise a claim under that tower. However, in its amended complaint, Xerox asserted that the two policies provided "continuity of coverage" and argued that Travelers' delay in responding to its coverage demand prevented Xerox from timely asserting a claim under the first tower. On appeal, both parties discuss the applicability of the first tower to the relevant events, and we accordingly reach this issue. We hold that the terms of the run off policies in the first tower preclude coverage. As noted above, Travelers' run off policy follows form to the first excess insurer's policy and therefore incorporates the endorsement stating that there is no coverage for acts arising on or after January 1, 2017. As discussed below, the primary acts that gave rise to liability in this case are the negotiation and approval of the allegedly disadvantageous sale to Fuji beginning in early 2017, and the decision in 2017-2018 not to extend the period for board nominations. All of these acts occurred after January 1, 2017. Therefore, Travelers' run off policy under the first tower is not applicable to the loss.
With respect to the second tower, Supreme Court correctly denied summary judgment to Travelers based on the Prior Acts Exclusion. However, the court should have gone on to hold as a matter of law that this exclusion is inapplicable to the facts of this case and to grant Xerox's motion for partial summary judgment on that issue. To determine the applicability of an "arising out of" exclusion, such as the one at bar, the Court of Appeals has adopted a "but for" test, meaning that "none of the causes of action that [the underlying plaintiff, i.e. Deason] asserts could exist but for the existence of the excluded activity" (Country-Wide Ins. Co. v Excelsior Ins. Co., 147 AD3d 407, 409 [1st Dept 2017], lv denied 30 NY3d 905 [2017]). Travelers failed to establish that the causes of action asserted in the underlying lawsuits could not exist but for the alleged wrongful acts preceding January 1, 2017 (see Mount Vernon Fire Ins. Co. v Creative Hous., 88 NY2d 347, 352 [1996]; Country-Wide Ins. Co., 147 AD3d at 409). The acts giving rise to liability in the underlying cases consisted of the 2017-2018 negotiation and approval of an allegedly disadvantageous transaction with Fuji and Xerox's 2018 denial of a request for a waiver of a deadline for advance notice of director nominations. The complaints in the two Deason actions allege that Xerox's former CEO and certain directors breached fiduciary duties by agreeing to a rushed and unfavorable transaction in their own self-interest. These causes of action could be viable even if Xerox had not previously entered into the joint venture with Fuji (see Mount Vernon, 88 NY2d at 350; McGraw-Hill Educ., Inc. v Illinois Natl. Ins. Co., 178 AD3d 532, 532 [1st Dept [*4]2019]).
Supreme Court correctly determined that Travelers failed to establish, as a matter of law, that the settlement agreed to by Xerox in the underlying actions was unreasonable. The reasonableness of a settlement amount is determined by weighing numerous factors, including the Xerox board's exposure, the costs of going to trial, and comparison with settlements in similar cases (see e.g. Vigilant Ins. Co. v Travelers Prop. Cas. Co. of Am., 243 F Supp 3d 405, 431-433 [SD NY 2017]). The settlement here is not unreasonable on its face. It resolved an attack on a multi-billion dollar transaction and resolved litigation against a large, publicly traded company by apparently well-financed plaintiffs. Accordingly, the question of reasonableness is for the finder of fact (see id.; Hendershot v Consolidated Rail Corp., 1998 WL 240495, *5, 1998 US Dist LEXIS 6748, *12 [SD NY, May 12, 1998, No. 95 CIV. 7899(BSJ)]).
The court also properly denied Travelers' motion for summary judgment to the extent that it sought dismissal of plaintiff's cause of action alleging breach of the covenant of good faith and fair dealing. Questions of fact exist as to whether Travelers acted in bad faith or with indifference towards Xerox's rights (see generally Selective Ins. Co. of Am. v County of Rensselaer, 26 NY3d 649, 657 [2016]; Pinto v Allstate Ins. Co., 221 F3d 394, 399 [2d Cir 2000]; Schmid v Allstate Ins. Co., 2017 WL 6994547, *8, 2017 US Dist LEXIS 229025, *19 [SD NY, Mar. 10, 2017, 15-CV-9657 (CS)]).
However, Supreme Court should have granted Travelers' motion to the extent of dismissing the third cause of action for negligent misrepresentation or omission. The elements of a claim for negligent misrepresentation are: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information" (J.A.O. Acquisition Corp. v Stavitsky, 8 NY3d 144, 148 [2007]). Even assuming that plaintiff can meet the first two elements of that cause of action, we conclude that Travelers established lack of reliance, and that plaintiff failed to raise a triable issue of fact as to whether it relied on any alleged misrepresentation or omission in furtherance of any particular purpose (see id.). In opposition to Travelers' showing, Xerox offers only conclusory allegations of reliance.
Supreme Court did not rule on the branch of Xerox's motion seeking dismissal of Travelers' numerous affirmative defenses. The first affirmative defense, failure to state a claim, can of course be asserted at any point in a lawsuit. Accordingly, courts generally will not dismiss it unless all other affirmative defenses are found to be legally insufficient (see Tribbs v 326-338 E 100th LLC, 215 AD3d 480, 482 [1st Dept 2023]). That is not the case here, as most of Travelers' affirmative defenses are viable. The twentieth affirmative defense alleging Xerox's [*5]failure to cooperate finds some support in Travelers' allegations that Xerox did not timely communicate the positions of the primary and first excess insurers, and information about the settlement, which slowed Travelers' consideration of its own position. We find that most of the remaining affirmative defenses are facets of Travelers' argument that the settlement amount was unreasonable, which remains a live issue in the case. However, Travelers' affirmative defense of laches finds no support in the record, as its counsel conceded at oral argument, and so it is dismissed.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 19, 2024

Footnotes

Footnote 1: Four other Xerox shareholders (one individual, the others pension funds) filed suit seeking to enjoin the sale. The expenses arising from these follow-along actions were apparently much lower than those incurred in the two Deason actions.